THE LYCOMING FIRE INSURANCE COMPANY, use of
J. ARTLEY BEEBER, Receiver *vs.* JAMES L. LANG-
LEY.

*Suit by a Pennsylvania Insurance Company against a Mary-
land Policy holder—Receiver—Suits by Foreign Corpora-
tions—Right of an Insurance Company to Sue after a De-
cree for its Dissolution—Inadmissibility of Oral evidence to
Vary the terms on which an Insurance is effected—Represen-
tations by Agent—Effect in this State of a Foreign decree
prescribing the percentage of Assessment upon Policy holders—
Res adjudicata—Certificate of Insurance Commissioner—
Insurance Act of 1878, ch. 106—Contract of Insurance and
Premium note—Revocation of License to Foreign Insurance
Company.*

A Fire Insurance Company incorporated under the laws of Pennsyl-
vania, is entitled to bring an action in a Maryland Court, for the
use of the receiver of such company, to recover from a Maryland
policy holder assessments upon his premium note, where the suit
is not brought by such receiver in his official capacity.

Although it is settled law, that a corporation must dwell in the place
of its creation, and cannot migrate to another sovereignty, yet it
may do business in all places where its charter allows, and local
laws do not forbid; and in the absence of such prohibition by
local laws, may institute suits in the Courts of States, other than
those under whose laws it has been established.

By the decree of a Court in Pennsylvania, a receiver was appointed
for a Fire Insurance Company, created under the laws of that State.
The decree also declared the Company to be dissolved, but at the
same time it referred to the Act of Assembly under which it was
passed.  That Act provided that when an insurance corporation
is dissolved, the Court decreeing such dissolution may appoint a
receiver to take charge of its effects, and collect the debts and
property due and belonging to it, "with power to prosecute and
defend suits *in the name of the corporation,* or otherwise, and to do
all other acts which might be done by such corporation, if in being,

that are necessary for the final settlement of the unfinished business of the corporation." In an action in this State brought in the name of the corporation for the use of the receiver, it was HELD:

That the decree of dissolution was no bar to the action.

Suit was brought by an Insurance Company to recover assessments upon a premium note executed by the defendant on the 24th of February, 1880. The note was as follows: "($567.) For value received in policy No. 513, (risk commencing the 1st day of March, 1880,) issued by the Lycoming Fire Insurance Company, I promise to pay to said Company, or their treasurer for the time being, the sum of five hundred and sixty-seven dollars, *in such portions, and at such time or times as the directors of said Company may, agreeably to their Act of incorporation, require.*" The Act of incorporation provided, that all persons insuring with the corporation thereby became members thereof, during the period they remained so insured, and every such member, before he received his policy, should deposit his promissory note for such sum as should be determined by the directors, and a part, not exceeding ten per cent. of such note, should be immediately paid, " and the remainder of said deposit note shall be payable in part *or the whole at any time when the directors shall deem the same requisite for the payment of losses by fire,* and such incidental expenses as shall be necessary for the transaction of the business of said corporation, and at the expiration of the time of insurance, the said note or such part of the same as shall remain unpaid after deducting all losses and expenses during said term, shall be relinquished and given up to the maker thereof." And in the defendant's written application for membership and insurance of his property, bearing the same date as the premium note, and immediately above his signature, and so printed as to attract notice, was the following covenant or agreement: "And the undersigned applicant for the proposed insurance, hereby covenants and agrees to accept the policy of the said L. F. I. Co., in accordance with its charter and by-laws. And it is expressly understood and agreed that the said Company *will not be bound by any act or statement made to or by the agent, restricting its rights or varying its written or printed contract, unless inserted in this application in writing.*" HELD:

That oral evidence was inadmissible on the part of the defendant to show that at the time the insurance was effected, the general agent of the Company represented to the defendant that he had made special arrangements with the Company, whereby the defendant

would be liable to be assessed on his premium note to the amount of five per centum thereof, and no more during any one year that the contract of insurance was in force, and that the first assessment of five per cent. would not be made until the 1st of March, 1881, and that the defendant gave his note upon the faith of this representation.

After his appointment by the Court, on the 8th of October, 1881, the receiver in discharge of his duties made out several statements or schedules, showing first, the total indebtedness of the Company; second, all the premium notes held by it, and the amounts expiring during each and every month since the date of ·the last assessment made by the Company on the 14th of May, 1880; third, the amount of losses and expenses for each month from that date to the appointment of the receiver; and fourth, a statement of the percentage of assessment each class of notes expiring as aforesaid was liable for, and the aggregate amount to be collected thereon. He then filed a petition to the Court presenting these statements, and praying for a decree directing him to levy such an assessment upon the makers of the notes, liable to assessment, as would be necessary to pay the debts of the corporation and the costs and expenses attendant upon winding up its affairs. Afterwards the Court, on the 12th of November, 1881, passed a decree reciting that the Court after full examination of the petition, schedules and *other evidence submitted*, and upon due consideration *after hearing had*, found the facts set forth in the petition and schedules to be true, and then proceeded to *specify in detail the exact percentage*, the receiver should levy upon each class of notes expiring during each month from July, 1880, to September, 1881, inclusive, and the sum of twenty per cent. on all notes in force on the 8th of October, 1881. HELD:

1st. That in thus prescribing the precise percentage of assessment, as well as in other respects, this decree was an adjudication by a Court of competent authority determining conclusively not only the amount of losses and expenses upon which the assessment was. founded, but what notes should be assessed, and the exact percentage to which each class of them should be subjected.

2nd. That the policy holders or members were bound by this adjudication, in suits like the present.

3rd. That a supposed error or irregularity in making the assessment could not be availed of by the defendant, a member of the corporation, in this suit.

The Company, which had previously conducted its business in this. State, sent to the Insurance Commissioner of this State in the usual

Lycoming .Fire Ins. Co. *vs.* Langley.

course their statement for the year 1879, in order to continue busi-
ness for the year 1880. This statement was sent, as required, within
sixty days from the 1st of January, 1880. It was examined and
laid aside for consultation. A demand was then made that the
Company should submit to a personal examination of its affairs,
and to suit the convenience of the Commissioner, the examination
was not to be made until May, 1880. The statement was accepted
by the Commissioner upon that condition, and he issued his cer-
tificate under that condition. The certificate, though it bore date
on the 1st of January, 1880, was not in fact issued until the 23rd of
April following. No examination was ever made because when
the Commissioner subsequently wrote to the Company fixing a date
therefor, they notified him that an examination would be unneces-
sary as they had withdrawn their agent from Maryland, and their
license was then revoked. The certificate thus issued and dated
the 1st of January, 1880, was to be operative until revoked. HELD:

1st. That in all this there was no violation of any of the require-
ments of the Maryland Insurance Act of 1878, ch. 106.

2nd. That there having been no revocation of the Company's license
or permission to do business in this State up to the 24th of Febru-
ary, 1880, when the defendant effected his insurance and gave his
premium note, no subsequent revocation of the license could have
the effect of rendering a contract which was then valid and subsist-
ing, inoperative and void.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

The *first eleven exceptions* are unnecessary to be stated.

*Twelfth Exception.*—At the close of the testimony the
plaintiff offered the three following prayers, the first of
which the Court, (BROWN, J.,) granted, but rejected the
second and third :

1. That the two certificates signed by Jesse K. Hines,
Insurance Commissioner, dated January 1st, 1879, and
January 1st, 1880, in connection with the evidence of the
witness, Jackson, (if believed by the jury,) show a suffi-
cient compliance with the provisions of the Maryland

statutes, to authorize it to make the contract of insurance mentioned in the premium note sued on this case.

2.   1st. That the execution by the defendant of the premium note sued on in this case, and of the application for insurance offered in evidence by the plaintiff are admitted.   2nd. That no competent evidence has been offered to vary the contract between the plaintiff and the defendant, contained in said premium note.   3rd. That no competent evidence has been offered of any such fraudulent representations made by the plaintiff or its agent, to the defendant, as are sufficient to invalidate the said contract.   4th. That the said premium note was by its terms in force on the 15th of May, 1880, and the 8th of October, 1881, and was liable to assessment by the plaintiff, and the assessment made by the Board of Directors of the plaintiff of twelve and a half per cent. on premium notes, in force on the 15th of May, 1880, was a legal assessment, and included the premium note sued on in this case, and the assessment on said note of twenty per cent., made by the receiver, testified to by him as having been made under the order of Court offered in evidence, was a legal assessment.   And, therefore, if the jury shall find that the copies of the "Muncy Luminary," offered in evidence, was published in the County of Lycoming on the dates appearing on the face of said newspapers, and that thereafter, in the spring of 1882, the notice offered in evidence and signed by J. H. Gable, was, by the direction of the receiver, mailed to the defendant at his place of business in Baltimore City, then the plaintiff is entitled to recover a sum equal to thirty-two and a half per cent. on the premium note of defendant offered in evidence.

3. That all that part of the deposition of the witness, Selby, from the eighteenth question, to the end of the deposition, having been read subject to exception, be excluded from the consideration of the jury, the answers of the witness to the interrogatories-in-chief, from nineteen

to twenty-four, inclusive, and the answers to the second, third and fourth cross-interrogatories.

The defendant offered thirteen prayers, the sixth and eleventh of which the Court granted ; the others were rejected. The insertion of the rejected prayers is unnecessary ; and the sixth and eleventh are contained in the opinion of this Court.

The plaintiff excepted, and took this appeal, the verdict and judgment having been rendered for the defendant.

The cause was argued before MILLER, YELLOTT, ROBINSON, RITCHIE, and BRYAN, J.

*James H. Gable,* and *Bernard Carter,* for the appellant.

*Thomas Mackenzie, Jr.,* and *John V. L. Findlay,* for the appellee.

MILLER, J., delivered the opinion of the Court.

The appellant was incorporated under the laws of Pennsylvania as a Mutual Fire Insurance Company. After doing business with success for many years, it met with heavy losses and the corporation was dissolved in October, 1881, by a decree of the Court of Common Pleas of Lycoming County, and J. Artley Beeber, was appointed receiver of its estate and effects, with power " to collect the debts and property due and belonging to it, and under the direction of the Court to do all matters and things pertaining to his said office, and in accordance with the Act of Assembly in such case made and provided." In May, 1883, this suit was brought in the *name of the corporation* for the use of the receiver against the appellee, a Maryland policy holder, to recover certain *assessments* upon his premium note. The trial resulted in a verdict and judgment for the defendant and the plaintiff has appealed.

By this appeal and the exceptions taken at the trial, three principal questions are presented.

1st. Has the company the right to bring this action in a Maryland Court?

2nd. Was the note of the defendant rendered void by reason of the representations made to him by Selby, the agent of the Company, at the time it was given and the insurance of his property effected, as stated in the defendant's sixth prayer?

3rd. Can the recovery be defeated on account of the mode in which the assessments were made, as stated in the defendant's eleventh prayer?

*First.* This is not a case where the action is brought by a receiver in his official capacity, and hence it does not fall within the general rule that such an officer has no extra-territorial jurisdiction, and cannot go into a foreign State or jurisdiction, and there institute a suit for the recovery of demands due the person or estate subject to his receivership. The generally accepted doctrine in this country is, that his functions and powers for the purpose of litigation, are limited to the Courts of the State within which he is appointed, and the principles of comity between nations and States which recognize the judicial decisions of one tribunal as conclusive in another, do not apply in such a case, and will not warrant a receiver in bringing an action in a foreign Court or jurisdiction. *Booth vs. Clark,* 17 *Howard,* 322; *High on Receivers, sec.* 239.. But here the plaintiff in the action is the corporation, and the suit is brought in its name. It has long been settled law that though a corporation must dwell in the place of its creation, and cannot migrate to another sovereignty, yet it may do business in all places where its charter allows, and local laws do not forbid, and in the absence of such prohibition by local laws, may institute suits in the Courts of States other than those under whose laws it has been established. *Angell & Ames on Corpora-*

*tions, secs.* 372, 373. But it is said the decree of the Pennsylvania Court appointing the receiver also dissolved the corporation, and therefore no suit in its name can be maintained, and if the effect of that decree and the law of Pennsylvania under which it was passed, was to work an absolute and total dissolution of the corporation, the argument would be unanswerable. But has such a dissolution been effected? It is true the decree declares the Company to be dissolved, but at the same time it refers to the "Act of Assembly," under which it was passed, and by reference to that Act we find it provided, that when an insurance corporation is dissolved, the Court, decreeing such dissolution, may appoint a receiver to take charge of its effects and collect the debts and property due and belonging to it "with power to prosecute and defend suits *in the name of the corporation*, or otherwise, and to do all other acts which might be done by such corporation, if in being, that are necessary for the final settlement of the unfinished business of the corporation." *Purdon's Annual Digest*, (1873–78,) *page* 2026, *sec.* 54. Similar provisions are almost invariably introduced into statutes, providing for the dissolution by judicial decrees of corporations of this character; and this is done in order to avoid the unjust operation upon the rights of both creditors and stockholders, of the harsh rule of the common law as to the effect of dissolution upon the property and debts of such corporations. The object and effect of such provisions, are to continue the corporation in existence for the special and limited purpose of collecting its assets, preparatory to the payment of its debts and distribution of the surplus, if any, to the stockholders, and to this end, suits are allowed to be brought "in the name of the corporation," in the same manner as if no decree of dissolution had been passed. Why should not such a law, upon principles of comity, be recognized in other jurisdictions, as well as the original law creating the corporation? In

both cases, the foreign law authorizes suits to be brought in the name of the corporation, and we see no good reason why the Courts of other States should sustain an action in the one case, and deny it in the other. No decision has been referred to in which the question has been directly adjudicated, but the doctrine announced by the Supreme Court in the recent case of *The Canada Southern Railroad Co. vs. Gebhard*, 109 *U. S.*, 527, would seem to be all that is needed in the way of authority upon the subject. In that case, the Court after stating the general rule that a corporation must dwell in the place of its creation, and cannot migrate to another jurisdiction, though it may do business in all places where its charter allows, and the local laws do not forbid, proceeds thus: "But wherever it goes for business it carries its charter, as that is the law of its existence, and the charter is the same abroad that it is at home. Whatever disabilities are placed upon the corporation at home it retains abroad, and whatever legislative control it is subjected to at home must be recognized and submitted to by those who deal with it elsewhere. A corporation of one country may be excluded from business in another country, but if admitted, it must, in the absence of legislation equivalent to making it a corporation of the latter country, be taken both by the government and those who deal with it, as a creature of the law of its own country, and subject to all the legislative control and direction that may be properly exercised over it at the place of its creation." There is no statute in this State forbidding the bringing of such suits in our Courts, and we have no difficulty in sustaining this action.

*Second.* By granting the defendant's sixth prayer, the Court instructed the jury that if they find from the evidence that Joseph Selby, Jr., was the general agent of the plaintiff, and that at the time the insurance was effected for which the defendant gave his premium note,

he, the said Selby, represented to the defendant that he had made special arrangements with the Company, whereby the defendant would be liable to be assessed on his said note to the amount of five per centum thereof, and no more during any one year that the contract of insurance was in force, and that the first assessment of five per cent. would not be made until the 1st of March, 1881, and that the defendant gave his note on the faith of this representation, then the plaintiff is not entitled to recover. The oral testimony which the Court below allowed to go to the jury showed that such representations were in fact made by Selby to the defendant, as well as to all the other Maryland policy holders, before, or at the time their insurances were effected. But this testimony was taken subject to exception, and the plaintiff by a special prayer asked the Court to exclude it from the consideration of the jury, so that the real question presented, is, was such testimony admissible in face of the terms of the written contract between the parties evidenced by the defendant's premium note, and application for insurance, or was the Company bound by such representations, assuming them to have been made by their agent? The premium note which was executed by the defendant on the 24th of February, 1880, in as follows: "($567.) For value received in policy No. 513, (risk commencing the 1st day of March, 1880, issued by the Lycoming Fire Insurance Company,) I promise to pay to said Company or their Treasurer for the time being, the sum of five hundred and sixty-seven dollars, *in such portions and at such time or times as the directors of said Company may agreeably to their Act of incorporation require.*" The Act of incorporation provides that all persons insuring with the corporation thereby become members thereof during the period they remain so insured, and every such member, before he receives his policy, shall deposit his promissory note for such sum as shall be determined by the directors, and a part, not ex-

ceeding ten per cent. of such note shall be immediately paid, "and the remainder of said deposit note shall be payable in part *or the whole at any time when the directors shall deem the same requisite for the payment of losses by fire,* and such incidental expenses as shall be necessary for the transaction of the business of said corporation, and 'at the expiration of the time of insurance, the said note or such part of the same as shall remain unpaid after deducting all losses and expenses during said term, shall be relinquished and given up to the maker thereof." And in the defendant's written application for membership, and insurance of his property to the amount of $8385, bearing the same date as the premium note, and immediately above his signature, and so printed as to attract notice, is the following covenant or agreement: "And the undersigned, applicant for the proposed insurance, hereby covenants and agrees to accept the policy of the said Lycoming Fire Insurance Company, in accordance with and subject to its charter and by-laws. And it is expressly understood and agreed, that the said Company *will not be bound by any act or statement made to or by the agent, restricting its rights or varying its written or printed contract, unless inserted in this application in writing.*"

Now treating the representations made by Selby as amounting to a parol agreement between him, as the agent of the company, and the defendant, it is manifest they are in direct conflict with the cotemporaneous or subsequent written contract contained in and evidenced by the premium note, which must in a Court of law be taken as expressing the final agreement of the parties, and as merging all previous verbal stipulations. An arrangement to the effect that the defendant.should be assessed to the amount of five per cent. of the note and *no more* during any one year, is utterly at variance with the promise and obligation to pay *the whole* or any part of it whenever the directors of the company should deem the same

requisite for the payment of losses and expenses. The admission of such evidence so evidently infringes the salutary rule that the written contract must prevail over previous verbal arrangements, that it is scarcely necessary to refer to authorities upon the subject. The case, however, of *Thompson vs. Insurance Co.*, 104 *U. S.*, 252, is directly in point. In that case the assured gave his note payable at nine months, for value received, in premium on his policy, " which policy is to be void in case this note is not paid at maturity, according to contract in said policy." The note was not paid at maturity, and in order to get rid of the forfeiture relied on by the defendant company, the plaintiff set up a parol agreement of the defendant made on receiving the note, that the policy should not become void on the non-payment of the note alone, at maturity, but was to become void at the instance, and election of the defendant, which election had never been made. But the Court held that as this supposed agreement was in direct contradiction to the express terms of the policy and the note itself, it cannot affect them, but is itself void, and said : "An insurance company may waive a forfeiture or may agree not to enforce a forfeiture ; but a parol agreement made at the time of issuing a policy, contradicting the terms of the policy itself, like any other parol agreement inconsistent with a written instrument made contemporary therewith, is void, and cannot be set up to contradict the writing. So, in this case, a parol agreement supposed to be made at the time of giving and accepting the premium note cannot be set up to contradict the express terms of the note itself, and of the policy under which it was taken."

But it is said the defendant was *induced to enter into the contract* by these representations thus made to him by this general agent, and that the Company is therefore bound by them. The authority mainly relied on in support of this position is, *Lycoming F. I. Co. vs. Wood-*

*worth*, 83 *Penn. St.*, 223, where this same company was the plaintiff, and where the suit was also for an assessment upon a premium note. But in that case, the evidence was to the effect that when the defendant applied for his policy, he was told by the agent that. the company was purely mutual, and issued no stock policies on a cash basis, that it did business only in Pennsylvania, and never took large risks in large cities, all of which statements were untrue at the time they were made. In other words, the representations upon which the defendant relied were false statements in regard to matters of fact—to a present or past state of things—and not, as in the present case, mere promises or assurances as to what the company would do in the future with respect to rights to be acquired under a contract not executed at the time they were given or made. This distinction is very clearly stated by the Supreme Court in *Insurance Co. vs. Mowry*, 96 *U. S.*, 544. In that case, the policy declared that it was made and accepted upon the express condition that if the amount of any annual premium was not fully paid on the day and in the manner provided therein, the policy should be "null and void and wholly forfeited," and it further declared that no agent of the company, except the president and secretary, could waive such forfeiture, or alter that or any other condition of the policy. In order to overcome the effect of a failure to pay a premium when it matured, the plaintiff sought to show that the agent who induced him to apply for the policy, told him the company would notify him in season to pay them, and that he need give himself no uneasiness on that subject, that no such notification was given before the maturity of the premium in question, and for that reason he did not pay it at the time required. But the Court not only held that all previous verbal arrangements were merged in the written agreement, and that the entire engagement of the parties, must be conclusively presumed to be there

stated, but also decided that the previous representations of the agent, could in no respect operate as an estoppel against the company. "The doctrine of estoppel," say the Court, "is applied with respect to representations of a party, to prevent their operating as a fraud upon one who has been led to rely upon them. They would have that effect, if a party, who by his statements as to *matters of fact*, or as to his intended abandonment of *existing* rights, had designedly induced another to change his conduct or alter his condition in reliance upon them, could be permitted to deny the truth of his statements, or enforce his rights against his declared intention of abandonment. But the doctrine has no place for application when the statement relates to rights depending upon contracts yet to be made, to which the person complaining is to be a party. He has it in his power in such cases to guard in advance against any consequences of a subsequent change of intention and conduct by the person with whom he is dealing. For compliance with arrangements respecting future transactions, parties must provide by stipulations in their agreements when reduced to writing."

But apart from these authorities, how is it possible for the defendant to avoid the agreement contained in his application, distinctly limiting and restraining the authority of the agent with whom he was dealing? That restriction is most explicit. It is an express stipulation that the company shall "not be bound by any act or statement made to or by the agent restricting its rights or varying its written or printed contract, unless inserted in this application in writing." It was so printed in the document that it must have been seen by the defendant when he signed it, unless he wilfully closed his eyes, or was guilty of the most reckless inattention or negligence. By signing that application with that condition thus placed before him, and by accepting the policy issued thereon he must be estopped from setting up powers in the agent

in opposition to such limitation or restriction, unless we are prepared to hold, as we are not, that insurance companies cannot restrict the authority of their agents, and that all conditions imposing limitations upon their powers, even though communicated to those to whom policies are issued, are utterly nugatory and useless. No doubt a liberal application should be made of the established rule that insurance companies doing business by agencies at a distance from their home office, are responsible for the acts of the agent within the general scope of the business entrusted to his care, and no limitations of his authority will be binding on parties with whom he deals, which are not brought to their knowledge; but we take it that *Mr. Wood,* in his valuable work on *Fire Insurance,* has correctly stated the law which is not only sustained by the authorities, but sanctioned by reason and justice, where he says: "In all cases where the assured has notice of any limitation upon the agent's power, or where there is any thing about the transaction to put him on inquiry as to the actual authority of the agent, acts done by him in excess of his authority are not binding, as where it is generally known that limitations are imposed in certain respects. So where direct notice, or any notice which the assured as a prudent man is bound to regard, is brought home to the assured, limiting the powers of the agent, he relies upon any act in excess of such limited authority at his peril. That an insurance company has the right to limit the powers of its agents must be conceded, and when it does impose such limitations upon his authority, in a way that no prudent man ought to be mistaken in reference thereto, it is not bound by an act done by its agent in contravention of such notice." *Wood on Fire Insurance, sec.* 387. In the case before us, there was no proof of any course of dealing which could have led the defendant to believe that the arrangement alleged to have been made by Selby, was subsequently approved or rati-

Lycoming Fire Ins. Co. *vs.* Langley.

fied by the Company, so as to bring the case within the decision in *Insurance Co. vs. Eggleston*, 96 *U. S.*, 572; nor does the instruction we are considering refer to or rely upon any direct act of the Company empowering their agent to make this contract with and for the benefit of the Maryland policy holders, and it would be most extraordinary if authority had been given to an agent to make an arrangement which would subvert the cardinal principle upon which mutual companies are founded, by allowing the responsibility for losses which should be shared equally by all, to be shifted from one set of mem-. bers or policy holders to another. For these reasons we hold there was error in granting this instruction as well as in rejecting the plaintiff's third prayer.

*Third.* There were two assessments sued for, one of twelve and a half per cent., made by the Board of Directors before the receiver was appointed, to cover losses up to the 28th of May, 1880, and the other of twenty per cent., made on the 12th of November, 1881, after the appointment of the receiver. By granting the defendant's eleventh prayer, the jury were instructed that if they find from the evidence that the receiver in making the assessment for twenty per cent., for the recovery of which this suit is in part brought, failed to assess the premium notes in force between the 28th of May and the 1st of July, 1880, for losses and incidental expenses occurring and accruing in the intermediate period, then the plaintiff is not entitled to recover. There is here an obvious error, in denying any recovery whatever, upon the ground alleged, for the fact that the last assessment was invalid, cannot affect the previous assessment made by the directors. The principal question, however, upon which the correctness or incorrectness of this instruction depends, is, can the defendant take advantage in this suit, of the alleged error in the last assessment, assuming it to exist? In determining this, we are not called upon to decide

whether such an error or irregularity would invalidate an assessment, made by the directors of the company. In some of the authorities cited by the appellee's counsel, it has been held that the action of directors in making such assessment, is not judicial in its nature, and therefore not conclusive upon the makers of the notes assessed, even though they are members of the corporation, and that it is incumbent upon the company in a suit for such an assessment, to aver and prove the losses upon which it was based, and that it was regularly and duly made in strict conformity with the provisions of their charter. *Herkimer County Mutual Ins. Co. vs. Fuller,* 14 *Barb.,* 373; *American Ins. Co. vs. Schmidt,* 19 *Iowa,* 502; *Planters' Ins. Co. vs. Comfort,* 50 *Miss.,* 662; *Pacific Mutual Ins. Co. vs. Guse,* 49 *Mo.,* 329. On the other hand, the Supreme Court of Pennsylvania, in a case where a similar question arose under the charter of this same company, held that the assured as a member of the corporation submits himself to the acts of the directors as the *common representatives of all the members,* and is bound by the assessment made by them unless he can show fraud or gross mistake; that this is a rule he has no right to complain of because he became a member on the very condition of submitting to be thus assessed for losses; and that the presumption is, that the directors *representing all the members* made the assessment properly. *Hummel & Co's Appeal,* 78 *Penn.,* 320.

But the assessment in controversy was not made by the directors, nor by the receiver acting either on his own motion, or under a general order of the Court directing him to make an assessment sufficient to pay losses. On the contrary, the record shows that after his appointment by the Court, on the 8th of October, 1881, the receiver in discharge of his duties, made out several statements or schedules, showing 1st, the total indebtedness of the company; 2nd, all the premium notes held by it, and the

amounts expiring during each and every month since the date of the last assessment made by the company on the 14th of May, 1880; 3rd, the amount of losses and expenses for each month from that date to the appointment of the receiver; and 4th, a statement of the percentage of assessment each class of notes expiring as aforesaid, was liable for, and the aggregate amount to be collected thereon. He then filed a petition to the Court presenting these statements, and praying for a decree directing him to levy such an assessment upon the makers of the notes liable to assessment, as will be necessary to pay the debts of the corporation, and the costs and expenses attendant upon winding up its affairs. Afterwards the Court, on the 12th of November, 1881, passed its decree in the premises. This decree recites that the Court, after full examination of the petition, schedules, papers, and *other evidence submitted*, and upon due consideration *after hearing had*, finds the facts set forth in the petition and schedules to be true, and then proceeds not simply to order the receiver to make the necessary levy and assessment, but *specifies in detail the exact percentage* he shall levy upon each class of notes expiring during each month from July, 1880, to September, 1881, inclusive, and then the specific amount of *twenty per cent.* on all notes in force on the 8th of October, 1881, the date of the appointment of the receiver. In thus prescribing the precise percentage of assessment, as well as in other respects, this decree differs materially from the order which was passed in the case of *Thomas vs. Whallon*, 31 *Barb.*, 172. We are unable to regard it in any other light than as an *adjudication* by a Court of competent authority determining conclusively not only the amount of losses and expenses upon which the assessment was founded, but what notes should be assessed, and the exact percentage to which each class of them should be subjected. That the policy holders, or members of the corporation, are bound by this adjudication, in suits like

the present, we entertain no doubt. We cannot distinguish it in principle from what we decided in the recent case of *Glenn, Trustee vs. Williams,* 60 *Md.,* 93. In that case suit was brought by the trustee against a Maryland stockholder to recover an assessment on his unpaid subscription to the stock of a corporation, chartered by the laws of Virginia, which provided that two dollars per share shall be paid at the time of subscribing, and the residue as required by the president and directors. The company became embarrassed by debts, and a creditors' bill was filed in the Chancery Court in Richmond, where its principal office was located, against the corporation and certain of its officers, praying that an assessment on the capital stock he made and the debts of the corporation be ascertained and paid. In that proceeding an account was taken of the debts due by the corporation and they were adjudged to be paid, and an assessment for that purpose of thirty per cent. on the unpaid subscriptions to the stock was made by the Court, and the trustee was directed to collect the same by suit or otherwise. Among the defences taken to the suit thus brought against him by the trustee, the defendant contended that the Virginia decree in determining and making the assessment was without validity or effect as against the stockholders, because they were not parties to the proceeding in their individual capacities, and had no opportunity to defend against the establishment by the decree of the large amount of debts against the corporation. But the Court, after a careful consideration of the question, and a review of the authorities, determined that in contemplation of law the stockholders were before the Court in all the proceedings touching the corporation of which they were members, and that the decree was conclusive and binding upon them in all the particulars complained of. So, and for the same reason, the decree in the case now before us, must have the same effect. The supposed error or irregularity in

making the assessment cannot be availed of by the defendant, a member of the corporation, in this suit.   We are, therefore, of opinion there was error in granting this eleventh prayer.

This disposes of all the questions directly presented by the appeal, but the defendant insists that at the time his note was given, the company had not complied with the conditions prescribed by our statutes for doing business in this State, and the note is for that reason void.   This point was decided by the Court below in favor of the plaintiff, and hence is not strictly before us on this appeal, but it has been fully argued and it goes directly to the root of the action.   Besides, it will necessarily arise if another trial is granted, and if the objection be well taken it would be useless to order a new trial even though there may be error in other rulings of the Court.   It is, therefore, in every way proper that this question also should now be disposed of.   It appears from the testimony in the record as we understand it, that this company which had previously conducted its business in this State, sent to our Insurance Commissioner, in the usual course, their statement for the year 1879, in order to continue business for the year 1880.   This statement was sent as required, within sixty days from the 1st of January, 1880.   It was examined and laid aside for consultation.   A demand was then made that the company should submit to a personal examination of its affairs, and to suit the convenience of the Commissioner, the examination was not to be made until May, 1880.   The statement was accepted by the Commissioner upon that condition, and he issued his certificate under that condition.   This certificate, though it bore date on the 1st of January, 1880, was not in fact issued until the 23rd of April following.   No examination was ever made, because when the Commissioner subsequently wrote to the company, fixing a date therefor, they notified him that an examination would be unne-

cessary as they had withdrawn their agent from Maryland, and their license was then revoked. The certificate thus issued and dated the 1st of January, 1880, was to be operative until revoked, that is, the company were to go on and do business subject to the revocation. Now in all this we find no violation of any of the requirements of our Insurance Act of 1878, ch. 106. It is certain there had been no revocation of the company's license or permission to do business in this State up to the 24th of February, 1880, when the defendant effected his insurance, and gave his premium note, and clearly no subsequent revocation of that license, could have the effect of rendering a contract, which was then valid and subsisting, inoperative and void. We must, therefore, overrule this objection to the action, and sustain the rulings of the Court below on this subject.

*Judgment reversed, and*
*new trial awarded.*

(Decided 22nd May, 1884.)