# Great Western Telegraph Company, for the use, etc., v. Gardner T. Barker.

1. Corporations—*No Liability of Subscribers to Pay Until Assessment.*—Under a contract between a corporation and the subscribers for shares of its capital stock, by which the subscribers are to pay for the stock at such times and in such amounts as the directors from time to time may order, the subscribers do not become liable to pay until a valid assessment has been made.

2. Same—*Assessments in Violation of Subscribers' Contract Void.*— An assessment in violation of a contract with the subscribers of the capital stock of a corporation creates no liability to pay.

3. Stockholders—*Corporation Not the Agent of.*—A corporation is not the agent of its stockholders in respect to their contract liability in any other sense than the payee of a note payable on demand is the agent of the maker to make such demand.

4. Insolvent Corporations—*Assessments by Courts.*—The making of an assessment upon the capital stock is one of the powers of the board of directors, but in default of its exercise by them it may be done by a court of competent jurisdiction in a proceeding properly before it.

5. Limitations—*Assessments upon Capital Stock.*—The statute of limitations in the case of an assessment by a corporation upon its stockholders, begins to run at the date of the assessment when the cause of action accrues.

6. Parties—*Corporations and Stockholders.*—Where the cause of action relates to property rights or liabilities of the corporation, the stockholders simply as stockholders, are not necessary parties; but if the object is to charge them personally on account of corporate property, or to obtain any relief against them with respect to it, they are proper and necessary parties.

7. Corporate Assets—*Demands Against Stockholders.*—As regards the creditors of a corporation there is no distinction between a demand against a stockholder upon his subscription and other assets which may form a part of the property of the corporation.

8. Corporate Powers—*In Making Assessments.*—The board of directors of a corporation in making an assessment upon the stockholders can not represent the stockholders so as to waive or in any manner affect their rights to a lawful assessment.

9. Courts—*Collateral Impeachments of Judgments.*—A court may have jurisdiction of the subject-matter and of the parties to a suit, but its judgment may be void because it has exceeded its' jurisdiction, and in such case it may be collaterally impeached.

10. Stockholders—*Nature of Their Relation to the Corporation.*—A stockholder, by becoming a member of a corporation, agrees that his in-

terest as such shall be managed by the corporation. The rendition of judgments against it may extinguish the value of his interest, but as a stockholder he has no right to appear and defend for it in suits against it.

**Memorandum.**—Assumpsit. In the Circuit Court of La Salle County; the Hon. CHARLES BLANCHARD, Judge, presiding. Declaration on a contract of subscription; judgment on demurrer to declaration; error by plaintiff. Heard in this court at the May term, 1894, and affirmed. Opinion filed December 13, 1894.

## STATEMENT OF THE CASE.

Plaintiff in error brought suit for the use of its receiver against defendant in error on a contract of subscription for 100 shares of its capital stock. The declaration, with the copy of the contract sued on annexed thereto, was as follows:

STATE OF ILLINOIS, }  In the Circuit Court of Peoria County.
 Peoria County.  }  To the February term, A. D. 1894.

The Great Western Telegraph Company, a corporation duly organized and existing under the laws of the State of Illinois, plaintiff in this suit, for the use of Frank H. Helmer, its receiver, by Israel C. Pinkney, its attorney, complains of G. T. Barker, defendant in this suit, who has been duly summoned of a plea of trespass on the case on promises. For that, whereas, the plaintiff is a corporation, and was organized in the year 1867, under and by virtue of a law of the State of Illinois providing for the establishment of telegraphs, which was enacted and went into effect in the year 1849, and having a capital stock of three million dollars ($3,000,000), divided into shares of the par value of twenty-five dollars ($25) each, the subscriptions and payments for which stock by its subscribers and stockholders constituted, and constitute, the means and fund for the prosecution of the plaintiff's business and the payment of its debts.

And the plaintiff, being such corporation as aforesaid, the said defendant heretofore, to wit, on the 28th day of January, A. D. 1870, at the county aforesaid, made and entered into an agreement in writing with the plaintiff, in and by which agreement the said defendant subscribed for, and

agreed to and with the plaintiff to take 100 shares of the capital stock of the plaintiff, and to pay for the same in the manner following, that is say : five per centum of the par value thereof at the time of making said agreement and the balance of the said par value thereof, to wit, of twenty-five dollars ($25) upon each of said shares so subscribed for, and agreed to be taken by said defendant as aforesaid, from time to time, as the directors of the plaintiff should order; and plaintiff further avers that it was in and by said agreement provided that no one of the several orders so to be made in pursuance thereof, as aforesaid, should direct or call for the payment of any sum of money in excess of the sum of ten dollars upon each and every of the said shares so subscribed for and agreed to be taken, as aforesaid.

And the defendant thereby, for a valuable consideration, undertook and promised to pay to the plaintiff, for each and every share so subscribed for by the defendant, as aforesaid, the sum of twenty-five dollars ($25), (except five per centum of the said amount, which was payable by the terms of said agreement, at the time of the making of the same) in such installments and at such times as said defendant might be lawfully called upon and required to pay the same, and according to the legal tenor and effect of the said agreement.

And plaintiff further avers that the said defendant has never heretofore paid to the said plaintiff more than the sum of ten dollars ($10) upon each and every of the said shares so subscribed for and agreed to be taken by him as aforesaid, so that there was, on and previous to the 10th day of July, A. D. 1886, a balance unpaid upon said shares of not less than the sum of fifteen dollars ($15) upon each and every of said shares, and which was then liable to be called for, and ordered and required to be paid under and by virtue of the terms of said agreement.

And plaintiff further avers that a large number of other persons than said defendant subscribed for and agreed to take other shares of said capital stock and became stockholders of the plaintiff, and to the extent and amount, in-

cluding those subscribed for and agreed to be taken by the defendant, as aforesaid, of all the shares into which said capital stock was divided, all of which was done previous to the year A. D. 1872.

That a certain suit was begun on or about the 19th day of November, A. D. 1869, in the Circuit Court of Cook County, in the State of Illinois, on the chancery side thereof, wherein one Jeremiah Terwilliger and certain other persons, stockholders of the plaintiff, were complainants (and which suit was so commenced on behalf of said Terwilliger and said other persons, and all others similarly situated), and also wherein the plaintiff and others were defendants, and in which suit the plaintiff was duly summoned, and appeared, and submitted to the jurisdiction of the said court; and which suit has been, ever since its commencement, and now is, pending and undetermined in said court; that certain proceedings were afterward therein had; that the said Circuit Court did therein, on, to wit, the 7th day of October, A. D. 1874, take jurisdiction and control of the plaintiff and its powers, property and affairs, and appoint a receiver for the plaintiff, and conferred upon him all the powers and duties usually granted and imposed upon receivers in such cases; and which order of appointment has never been heretofore revoked, vacated, annulled nor set aside; and the plaintiff avers that its business, powers and duties, and the powers and duties of the board of directors of the plaintiff have been thereby vested in, and exercised, managed and controlled, by the said court and said receiver, at all times heretofore and from the time of said appointment, of all of which the said defendant had notice; that previous to the 10th day of July, A. D. 1886, by an order then duly made and entered in said chancery cause of Terwilliger and others against the plaintiff and others, one Elias R. Bowen became and was the receiver of the plaintiff, and remained and was such receiver therein from the making of such order, until, to wit, the 20th day of March, A. D. 1892, when he, the said Bowen, died; that afterward and on, to wit, the 22d day of March, A. D. 1892, by an

order then duly made and entered in said chancery cause, one Frank A. Helmer, the above named, was appointed and therein became and was the receiver of the plaintiff, in the place and stead of said Bowen, deceased, and has ever since continued to be, and has remained and still is such receiver, so that the plaintiff avers that the said Frank A. Helmer, as such receiver, is in possession of, and entitled to receive, the property and effects of the plaintiff.

Plaintiff further avers that previous to the 10th day of July, A. D. 1886, it had become and was justly indebted to various and sundry persons in a large amount, to wit: In the sum of four hundred thousand dollars ($400,000), and which indebtedness has never been paid; that the whole of said indebtedness accrued against said plaintiff subsequent to the making and entering into the said contract of subscription and agreement to take and pay for the said shares, by the said defendant; that on the said last mentioned date, and for a long period previous thereto, the plaintiff had no property, real or personal, with which to pay the said indebtedness or any part thereof, except the amounts unpaid upon the shares of its capital stock, subscribed for and agreed to be taken by the defendant and by its other stockholders and subscribers to its capital stock as aforesaid; that previous to said last mentioned date, a small number of said stockholders had paid to the plaintiff twenty-five dollars ($25) upon each of the shares of said capital stock subscribed for by them, respectively, and the par value and in full for the same; that the balance and remainder, and the others of said stockholders and subscribers, have not now, and had not previous to said last mentioned date, nor have any of them, paid more than the sum of ten dollars ($10) upon each and every of the shares of said capital stock severally subscribed for, or held by them; that many of them have never paid more than the sum of fifty cents upon each and every of such shares severally subscribed for by them; that there was on said last mentioned date, a balance and amount unpaid upon each and every of the shares of said capital stock (excepting those which have been paid for in full as

aforesaid), including the said shares subscribed for by defendant as aforesaid, of not less than fifteen dollars ($15), and which the said stockholders, including the defendant, were, on said last mentioned date, liable to be severally called upon and ordered to pay according to the terms of the said agreements of subscription; that it therefore became and was necessary that the said stockholders and each of them (except those who had paid in full), and including the said defendant, should severally be ordered to contribute and pay a certain portion *pro rata*, of the par value of the shares of said capital stock subscribed for by them, to be used and applied in payment of the said indebtedness, and the expenses of said receiver, incurred in and about the affairs of the plaintiff; and plaintiff further avers that all of said stockholders of plaintiff were not made parties to said suit and proceeding in said Circuit Court of Cook County, and that it was impracticable to make them such parties; and plaintiff further avers that certain other proceedings were therein in said suit had, that the said court, having then and there full and competent jurisdiction, power and authority in the premises, did, on said tenth (10th) day of July, A. D. 1886, make and render therein a certain decree, and did in and by said decree, find and declare, order and decree, as follows, to wit:

That the plaintiff is a corporation and was duly organized in the year 1867, under and by virtue of a law of the State of Illinois providing for the establishment of telegraphs, which was enacted and went into effect in the year 1849; that the said suit was commenced in the year 1869, against the plaintiff and certain other persons, who were each duly served with process, and appeared in said suit in person and by counsel, and that said suit has ever since been, and is now, pending and undetermined in said court; that a receiver was appointed in said suit of and for the plaintiff and its property both real and personal, on the 7th day of October, A. D. 1874, upon supplemental bill of complaint filed in said suit, and on account of mismanagement, and malfeasance of the then officers of the plaintiff, and, as alleged

and set forth in said supplemental bill, and as well by consent and stipulation of the plaintiff and the other parties to said suit, that said receivership has never since been discontinued; that the plaintiff is largely indebted and to the extent of more than three hundred and seventy-five thousand dollars ($375,000), and which indebtedness is in the form of judgments and decrees rendered against the plaintiff; that about two-thirds of said indebtedness accrued against the plaintiff, and was created previous to the first day of September, A. D. 1872, and on account of the construction of its telegraph lines and other property, and material furnished and labor performed and money advanced in and about such construction, and in and about the operation of the lines of plaintiff; that a large portion of this two-thirds of said indebtedness was and is for money loaned and advanced to the plaintiff, and which was used by it in the construction and operation of its telegraph lines and other property; that said court had, before said tenth (10th) day of July, A. D. 1886, by reference had for that purpose in said suit, determined and found the entire indebtedness of the plaintiff, and the name of each creditor of the plaintiff, and the amount due each, and that the same then appeared by the records in said suit; that each and all of said creditors did, under the orders of said court in said suit, make proof before said court of their several claims, judgments and decrees against the plaintiff, and did thereby make themselves parties to said suit; that all the property of the plaintiff had before said last mentioned date been sold and disposed of, under the orders of said court in said suit, subsequent to the said appointment of the receiver as aforesaid, and the proceeds therefrom distributed to the creditors of the plaintiff; that on said last mentioned date the plaintiff had no property, real or personal, except as thereinafter stated in said decree, with which the said indebtedness or any part thereof could be paid; that the only means or resources that the plaintiff had on said last mentioned date for the payment of said indebtedness were and are the balances and amounts remaining

unpaid and due from its stockholders upon their several subscriptions to its capital stock, and the amounts unpaid upon the capital stock of the plaintiff; that there are about two thousand stockholders of the plaintiff, who are widely scattered through more than twelve different States and Territories of the United States, and in other places, and the larger portion of whom live at great distances from the place of holding said court, and from said county of Cook, while the residences of many of them are entirely unknown to said receiver or his solicitor, although diligent inquiry had been made by them in reference thereto, and that it was and is therefore impracticable that all of the said stockholders should be made parties to said suit and proceeding; that the said subscriptions to the shares of said capital stock were made principally in the years 1868, 1869, 1870 and 1871; that many of the stockholders of the plaintiff have become insolvent or have died since their subscriptions were made; that a few of said stockholders have paid the full par value of twenty-five dollars on each and every share thereof; that some of said stockholders have paid forty per cent of such par value, or ten dollars on each share subscribed for or held by them; that many of said stockholders have paid only fifty cents upon each share subscribed for or held by them; that all of said stockholders, excepting those who have paid twenty-five dollars on each of the shares of said stock subscribed for or held by them respectively, now owe and are liable to the plaintiff for an unpaid balance upon their several subscriptions to such stock of not less than fifteen dollars ($15) on each share, or sixty (60) per centum of the par value thereof, and that many of them owe thereon much more than sixty per centum of the par value thereof; that the liability of the stockholders to said company is based upon and controlled by contracts of subscription made with said company, and in and by which contracts the said stockholders agree to take the number of shares subscribed for by them, and pay for the same in installments, as follows : Five per centum of the par value thereof at the time of the making of their respective subscriptions

therefor, and the balance of said par value as the directors of the plaintiff from time to time should order; that the said stockholders who have not paid in full, as aforesaid, are severally liable; liable to the plaintiff for the balances now unpaid upon the shares of such stock subscribed for or held by them, being the difference between the amounts actually paid thereon and the par value thereof; that the said unpaid balances still remain liable to be called for, and ordered and required to be paid by the said subscribers, stockholders and their assigns; that the collection of whatever sums are required to be paid by said stockholders, in order to pay the said indebtedness, is likely to be attended with great difficulty, labor and expense; that it was, therefore, necessary and proper that thirty-five per centum of the par value of each share of the capital stock subscribed for and agreed to be taken or held by said stockholders, and not paid for in full, should be called for and required to be paid by them and their assigns for the purpose of paying said indebtedness; and which said findings and declarations by said court in said decree, plaintiff avers, were and are true.

Plaintiff further avers that the said court did, for the purpose of paying the said indebtedness of the plaintiff, also, in and by said decree, order, adjudge and decree as follows, to wit: that a call or assessment be made upon the stock and stockholders of the plaintiff (excepting those who have paid in full), their legal representatives and assigns, of thirty-five per centum of the par value of the shares of said stock subscribed for or held by them, being $8.75 on each and every share thereof, and that the stockholders of the plaintiff, and each and every of them (excepting those who have paid $25 on each and every share subscribed for or held by them), and their legal representatives and assigns, pay to the receiver of the plaintiff, so appointed, as aforesaid, the several amounts so called for and assessed and required and ordered to be paid, namely, $8.75 on each and every share subscribed for or held by them respectively; and that the same be paid upon the demand of said receiver or his agent, and that the said receiver should at once proceed to collect the sums so

ordered paid by said decree, and make all necessary demands for such payments, employ such assistance and counsel, take such action and institute such suits and proceedings in the name of the plaintiff, and in such jurisdictions as the said receiver should be advised, or deem expedient or proper, and for the purpose of enforcing the payment of the said sums ordered paid as aforesaid, and which said decree was duly entered of record in said suit on said tenth (10th) day of July, 1886, of all of which said defendant had notice.

And the plaintiff avers that thereupon, and from the time of the making and entering of the said decree as aforesaid, and thereby, the said defendant became indebted to the plaintiff, and was liable to pay to the plaintiff the sum of eight dollars and seventy-five cents ($8.75) upon each and every of the said shares so subscribed for by him as aforesaid, to wit, the sum of $875, upon and according to the demand of said receiver of the plaintiff.

And plaintiff further avers that the said receiver of the plaintiff, to wit, the said Bowen, as such receiver, and in pursuance of the terms of said decree, did, on, to wit, the 27th day of January, A. D. 1888, at, to wit, the county aforesaid, make proper and lawful demand upon the said defendant, that he pay to him as the receiver of the plaintiff, the said sum of money last above mentioned, within five days from the said last mentioned day, and also did at the same time give notice to the said defendant of the making and entering of said decree.

And the plaintiff avers that although often requested, the defendant has not paid the said sum of money, or any part thereof, but to pay the same has neglected and refused, and still refuses, to the damage of the plaintiff in the sum of two thousand dollars ($2,000).

Copy of contract sued on:

" Capital, $3,000,000.    Shares, $25.    Assessments not to exceed $10 on a share.

Subscription list for the capital stock of the Great Western Telegraph Company.

We, the subscribers hereunto, for value received, sever-

ally, but not jointly, agree to take the number of shares in the capital stock of The Great Western Telegraph Company placed opposite our respective names, and pay for the same in installments, to wit: five per cent on amount subscribed for, and the balance as the directors from time to time may order; in consideration thereof, The Great Western Telegraph Company agrees that when forty per cent of the par value of the shares shall have been paid under such orders, and the installment receipts therefor surrendered to the company, the number of shares severally subscribed by the undersigned, shall be issued to them as full paid stock by the said company.

Scott and St. John are appointed agents to solicit stock and receive only the first installment of five per cent (fifty cents on a share) at the time of subscribing.

                                J. SNOW, Secretary.

| Names. | Residence. | Date of Subscription. | Number of Shares. |
|---|---|---|---|
| G. T. Barker. | Peoria. | January 28, '70. | One hundred." |

A demurrer to the declaration was interposed and sustained, and plaintiff abiding by its declaration, judgment was rendered for defendant for costs; to reverse that judgment this writ of error was sued out.

THOMAS J. SUTHERLAND and ISRAEL C. PINKNEY, attorneys for plaintiff in error.

BRIEF FOR DEFENDANT IN ERROR, STEVENS & HORTON, ATTORNEYS.

While the contract of subscription is a contract to pay, it is not an absolute promise, but upon condition that an order therefor is made by the board of directors. Such a promise, like any other of that character, does not mature until the condition is legally performed—until a valid order or call is made. Cook on Stockholders, Sec. 105; Cuykendall v. Corning, 88 N. Y. 129.

Justice between the shareholders of a corporation requires that all the shareholders should contribute in respect of

their shares at the same time and in ratable amounts; a call requiring some shareholders to pay any more than others would, therefore, be invalid.    But if some shareholders have already contributed more than others, it would be not only the right, but the duty of the directors to make calls upon the other shareholders in such amounts as to equalize the contributions of all.    Morawetz on Corporations, Sec. 154. A call can not be made so as to affect a part only of the subscribers.    It must be made on all alike, or it will be void. The courts will not allow the directors of a company so to proceed as to require some of the stockholders to pay calls and not to require others to do the same.    Any such attempt will be promptly set aside and rectified.    Cook on Stockholders, Sec. 114; see, also, Great Western Telegraph Co. v. Gray, 122 Ill. 630; Pike v. B. & C., etc., R. R., 68 Me. 445; Great Western Telegraph Co. v. Burnham (Wis.), 47 N. W. 373; Spangler v. I. & I. C. Ry. Co., 21 Ill. 276; Pike v. Shore Line R. R., 68 Me. 445; Chandler v. Brown, 77 Ill. 333; Lamar Insurance Co. v. Gulich, 102 Ill. 41.

MR. JUSTICE CARTWRIGHT DELIVERED THE OPINION OF THE COURT.

The declaration in this case is the same in substance as the one which we held subject to demurrer in Bennett v. Great Western Telegraph Co., for use, etc., 53 Ill. App. 276. From its allegations it appears that a suit in equity was commenced in 1869, against plaintiff by some of its stockholders; that the other stockholders, among whom was defendant, were not made parties because impracticable; that a receiver was appointed on account of mismanagement and malfeasance of the officers of plaintiff and by consent and stipulation of the plaintiff and the other parties to said suit; that under orders of court entered in said suit, certain creditors of plaintiff proved claims against it; that a decree was entered finding that some subscribers for stock had paid in full $25 for each share, some had paid $10, and some fifty cents on each share, and assessing thirty-five per cent on all who had not paid in full, regardless of what they had paid,

and that defendant was one of those who had paid $10 on each share subscribed for by him.

The contract of defendant set out in the declaration only bound him to contribute ratably to the payment of the debts of the corporation. 1 Morawetz on Priv. Corp., Sec. 154; Cook on Stock and Stockholders, Sec. 114.

The contract was to pay at such times and in such amounts as the directors from time to time might order, and under such a contract the subscriber does not become liable to pay anything until a valid call or assessment has been made. Cook on Stock and Stockholders, Sec. 105; Banet v. A. & S. R. R. Co., 13 Ill. 504; Spangler v. I. & I. C. Ry. Co., 21 Ill. 276. The assessment was shown by the declaration to have been made in violation of defendant's contract, and to have been such that if made by the directors under the terms of the contract it would have been void, and created no liability on his part to pay. It is claimed, however, that he can make no defense under his contract because he was represented in fixing his liability by the corporation which was the other party to his obligation, and which therefore represented both sides of the contract in the suit in equity, and that while Terwilliger and other of his fellow stockholders were obtaining an assessment the plaintiff was his representative in making defenses against it.

Plaintiff in error claims that in the case of Bennett v. Great Western Telegraph Co., *supra*, we misconstrued the decision of the Supreme Court in Great Western Telegraph Co. v. Gray, 122 Ill. 630, and that our decision was against the weight of authority. We were not unmindful at that time that there were decisions in support of the doctrine of representation to the extent contended for, but none were cited, and as we then regarded and still regard the Gray case as an authority in support of our decision it did not seem necessary to call attention to such decisions. Some cases on that subject are now referred to, but perhaps more to the purpose of counsel than any that have been cited, and directly supporting his claim is the case of Lycoming Fire Ins. Co. v. Langley, 62 Md. 196.

In the case of Glenn, Trustee, v. Williams, 60 Md. 93, which is cited by counsel and also by the Supreme Court in the Gray case, among the defenses to the assessment was the fact that the stockholders were not parties as individuals to the suit in Virginia and had no opportunity to defend against the establishment of debts against the corporation which they were assessed to pay, and it was held that they were represented in their corporate capacity by the president and directors, who were intrusted with the management of the corporate interest of all the stockholders.    The stockholders were held to be concluded as to such debts the same as they would be in any ordinary action against the corporation to establish and recover a debt, and not entitled to set up the statute of limitations against the claims so established, because it was for the corporation to decide whether that statute should be resorted to as a defense against them. It was also held, as in the Gray case, that the statute of limitations did not begin to run against the cause of action on the subscription until the call was made.    We see nothing in that case conflicting with our decision.    But in the case of Lycoming Fire Ins. Co. v. Langley, *supra*, it was held that the defendant was barred from his personal defense under his contract.    That was a suit for the use of a receiver against a Maryland policy holder to recover two assessments on his premium note.    One was made by the directors before the receiver was appointed, and the other by the receiver under an order of a court in Pennsylvania. It was held to be error to instruct that if the receiver, in making his assessment, failed to assess the premium notes in force during a certain period, for losses and incidental expenses occurring and accruing during the period, the plaintiff could not recover, and it was decided that the defendant, as a policy holder, and consequently member of the Mutual Insurance Company, was in contemplation of law before the Pennsylvania court, and that the order of that court was a conclusive determination what notes should be assessed and the amount he was liable to pay on his contract.

The Supreme Court of this State, in the Gray case, referred to Glenn v. Williams, 60 Md. 93, as an authority on the doctrine of representation, but made no reference to the insurance case.    The case of Sanger v. Upton, 91 U. S. 56, was also cited in the Gray case with approval.    In that case the order was to pay the unpaid balances of the stock subscriptions, and the assessment was just such as could be legally made by directors under the contracts of subscription.    It was held not necessary that the stockholders should be before the court when it made the assessment, and the only question personal to the appellant, Mary E. Sanger, was whether she owned the stock, which was decided against her on the ground that she was estopped to deny her ownership.

Plaintiff in error also relies upon the cases of Hawkins v. Glenn, 131 U. S. 329, and Glenn v. Liggett, 135 U. S. 543. In those cases the call was for thirty per cent of the subscriptions, and it clearly appears would have been binding if made by the officers of the corporation.    In the first mentioned case the court said :

" But it is said that a binding assessment can not be levied without the presence of the stockholders or service of process or notice upon them.    Under the charter of this company a call could only be made by the president and directors and was a corporate question merely, and in the situation of the company's affairs it was a duty to make it, failing the discharge of which by the president and directors, creditors could set the powers of a court of equity in motion to accomplish it.    Executing in that regard a corporate function for a corporate purpose, it is difficult to see upon what ground it could be held that the court could not order an assessment operating upon stockholders, who would be bound if the president and directors had ordered it."

These cases recognize the doctrine that the court in making an assessment is exercising a corporate function within the limits of a corporate power.    The language used is similar to that employed by the Supreme Court in the Gray case.    The latter case as before stated we regard as an

authority that a stockholder is not barred of his personal
defenses in such a case.   One of the points in that case was
that the claim was barred by the statute of limitations,
and this was treated as a good defense if the statute had
run, but it was held that the cause of action accrued at the
date of the assessment and that it had not commenced to
run when the assessment was made.   There was evidently no
claim that the statute had run after the assessment which
had been recently made.   If the order of assessment con-
cluded Gray it did so as to any defense he might have had
under that statute equally with all others.   The Supreme
Court held no such doctrine, but disposed of that defense on
other grounds.

The case of Ward v. Farwell, 97 Ill. 593, was there cited,
and in that case it was held that the stockholders, simply as
stockholders, were not necessary parties; but if the object
was to charge them personally on account of corporate
property or to obtain any relief against them with respect
to it, they would be proper and necessary parties.

It was decided that Gray could not question, collaterally,
the appointment of a receiver of corporate assets in which
his interest was the equity of a stockholder because he was
represented in his interest as such stockholder by the pres-
ence of the corporation.   But as to the order of assessment
he was not before the court, and it was held not necessary
that he should be there at all, because it was not necessary
that he should be before the directors when they were mak-
ing calls.   There is no intimation that the payee of his
obligation was representing him in his individual capacity
as a party to the contract.

The purpose of this suit is to recover from defendant, as-
sets, which it is alleged he is withholding from the plaintiff.
As regards creditors, there is no distinction between a de-
mand against a stockholder on his subscription and any
other assets which may form a part of the property of the
corporation.   Sanger v. Upton, *supra;* Hawkins v. Glenn,
*supra.*   If the consideration of defendant's promise had not
been stock, but it had rested on some other consideration,

and was payable on the same condition, a call would be
necessary as a step toward its collection, and if directors
failed to make it, the court could make it. We think that
in the Gray case the assessment was regarded as such a
step. The court had taken possession of the corporate as-
sets and was authorized to exercise the powers of the direc-
tors for their collection. The assessment was merely a step
toward such collection, and the court directed its receiver
to resort to such courts as might have jurisdiction of the
parties and sue upon the contracts for the amounts assessed.
It does not seem to have been regarded as a judicial sen-
tence concluding the parties as to their individual liability.
In Bangs, Receiver, v. Duckenfield, 18 N. Y. 592, where
different rates were assessed on premium notes, the assess-
ment was held as to a maker of a note not a party to the
suit in which the assessment was made, in a point involving
his personal liability, to not be such a sentence, and to have
no greater force than the same act would have possessed if
done by the board of directors. The contention of plaintiff
in error that it has greater force and is of the nature of a ju-
dicial decision, is founded alone on the presence of the cor-
poration in the suit. If that is so it must be because it has
power to waive defendant's right as an individual. It has
no such power in this State outside of court. The board of
directors in making an assessment can not represent the
stockholder so as to waive or in any manner affect his right
to a lawful assessment. The defendant's contract amounted
to a promissory note payable upon demand, being made by
the board of directors. Goshen Turnpike Co. v. Hurtin, 9
Johns. 217; White v. Smith, 77 Ill. 351. Ordinarily, the
payee of such an obligation could not go into court and
waive the demand for the maker.

Though a court may have jurisdiction of the subject-mat-
ter and of the parties to a cause, its order may be void, be-
cause it has exceeded its jurisdiction. Courts are limited in
the extent and character of their judgments, and if they
transcend their lawful powers their judgments are void
and may be collaterally impeached. U. S., for use, etc., v.
Walker, 109 U. S. 258; Windsor v. McVeigh, 93 U. S. 274;

Rogers v. Dill, 6 Hill 415; Folger v. Columbian Ins. Co., 99 Mass. 267; Fithian v. Monks, 43 Mo. 502; Seamster v. Blackstock, 83 Va. 233; Anthony v. Kasey, 83 Va. 338.

In U. S., for use, etc., v. Walker, *supra*, an orphans' court, having jurisdiction of the estate of a decedent and of the person of the administratrix, and having power on her removal to settle her account and order her to deliver unadministered assets to the administrator *de bonis non*, entered judgment by which she was ordered to pay over a balance found due her from the estate and it was held to be void because the fund was not considered unadministered assets. In the case before us, there is an order reciting on the face of it facts which show that it is illegal and an arbitrary violation of individual right. It would be no less so, if it had ordered those who, by its findings, had paid in full, to pay again, or that the burden of the assessment should be borne by those over a certain age, or living in a certain county or State. If such an order is binding and conclusive against the individual stockholders, scattered, as alleged, over more than twelve States and Territories, in a suit begun and carried on by a few of their fellow-stockholders, by virtue of a fiction of law that they have had their day in court and an opportunity to show why the assessment should not be made because the corporation was there, then the courts may be easily made the instruments of fraud and injustice. The assessment in question was held void in Great Western Telegraph Co. v. Burnham, 79 Wis. 47.

But we understand that the corporation was not authorized to act for or represent the defendant as to his individual liability to it, and that the order was not intended and is not to be treated as a judgment against him, but rather as the exercise by a court of a corporate function. It is conceded that, although the Circuit Court of Cook County had defendant on the list, he might defend this suit on the ground that he did not belong there by pleading that he never signed the contract, or that it was obtained by fraud, or made in violation of law, or that the relation of stockholder was canceled before the assessment; and we see no reason why he

may not also insist upon the conditions of his contract. His promise to pay was several and individual, and if the condition that he should only pay assessments equalized between himself and his fellow-stockholders so that they should contribute ratably to the corporate assets had been written on the face of it, an order to pay in violation of that condition would not be more an encroachment upon individual as distinguished from corporate interest and right, than the order in question. The law implied that condition, and if the same thing had been written in his contract it would have been mere surplusage. If the order is to be treated as an adjudication of his individual right under the conditions of his contract, then, by the rules laid down in Ward v. Farwell, *supra*, he would have been a necessary party to the suit where it was made. It is immaterial whether the assets which he is charged with withholding from the plaintiff consist of money or chattel property. The right claimed by him is personal. But treating the order merely as the exercise of a corporate function and a step in the collection of the assets for the purpose of maturing the obligation, he was not a necessary party, and it was so held and the order so treated in the Gray case. The court there said that a court of equity might make the order in place of the directors, citing Glenn v. Saxton, 68 Cal. 353. In that case the question was presented whether a call so made was a judgment or decree of the court, and it was held not to be, and it was said that the call made by the chancery court was the same in effect as if made by the president and directors of the corporation. Accordingly the action thereon was held to be barred by a two years' statute of limitations, when it would not have been barred if the call could be considered a judgment or decree of a court.

While there are cases in which it has been held that the corporation represents a member in his contract relation to it so as to bind him to a personal liability by an unlawful assessment, in violation of his contract, of which Lycoming Fire Ins. Co. v. Langley, *supra*, is an example, in almost all

cases where an assessment has been in question, it has been entirely legal and in accordance with the stockholders' contract, and the only question was whether the court could make it in place of the board of directors and in the absence of the stockholders. In those cases it has often been said that the stockholders in their relations as stockholders are represented by the corporation; but we do not think that in the just character of that relation the several personal liability of the stockholder to the corporation or its creditors is embraced. The stockholder, by becoming a member of a corporation, agrees that his interest as such shall be managed by the corporation. The rendition of judgments against it may extinguish the value of his interest, and yet he has no right as a stockholder to appear and defend for it in suits. So a few stockholders may file a bill against the corporation and without notice to their fellow-stockholders; claims may be proved in the course of the litigation against the corporation which bind the other stockholders, because they are against it in matters submitted to its management. The stockholder can not question the necessity or advisability of an assessment to pay such claims. To do so would be to question the allowance of the claims or judgments themselves. But our Supreme Court has never said that in respect to any individual liability to pay or contribute to the payment of them the stockholder is represented by the corporation, and in the eye of the law before the court by its presence.

It is also urged that the matters in controversy here became *res judicata* by the decision in the Gray case. The declaration demurred to in this case makes no averment about Gray's case. But if the defendant's rights have been settled by the defeat of Gray in his case, it must be because Gray represented him in some way. That would certainly be carrying the rule too far.

Counsel also insists, with much earnestness, that everything is to be regarded as decided against Gray touching the merits of the declaration and the order of assessment which could have been decided against him if presented to the

court and passed upon, and that we are bound to so regard the question raised in this case. The question involved here might, perhaps, have been raised in that case, but the doctrine of *stare decisis* embraces nothing except questions decided, and as the question was not raised there was no decision on it for us to stand by. So far as the decisions of our Supreme Court afford us any light on the question they lead to the conclusion at which we have arrived, that the assessment was void and the demurrer properly sustained. The judgment will be affirmed.