## Severt T. Gunderson et al. v. Illinois T. & S. Bank, $\frac{100 \quad 461}{}$ Trustee.     . a199s 422

1. CORPORATIONS—*Right of Stockholders to Intervene in Suits Against the Corporation.*—Where stockholders have a right upon a well defined ground to defend their own interests in a suit against the corporation, they may, as stockholders, be permitted, in the discretion of the trial court, to intervene; but upon the mere ground that they are stockholders, and therefore *per se* necessary parties, no right to intervene exists.

2. SAME—*Right to Intervene When Directors Fraudulently Refuse to Protect Interests of Corporation.*—While it is true that the corporation is supposed to represent the shareholders in all litigation to which the corporation is a party and the shareholders are not necessary parties, it is also true that in cases where directors have fraudulently refused to protect the interests of the corporation and hence the interests of the shareholders in litigation, the shareholders may be allowed, in the discretion of the trial court, to appear and act in such litigation for their own protection.

3. SAME—*Fraud in the Incorporation of, Not a Valid Defense Against Foreclosure Proceedings.*—Facts which would establish that the capital stock of a corporation was not in good faith fully subscribed for when the report of the commissioner was made, upon which the charter of the corporation was issued, does not afford any valid defense against the right of bondholders to foreclose a trust deed upon the corporate property.

4. LACHES—*Rule Where Defense is Want of Knowledge on the Part of One Charged with Laches.*—The tendency of the courts, where the defense is want of knowledge on the part of one charged with laches, is to hold the party to a rigid compliance with the law which demands not only that he should have been ignorant of the fraud, but that he

should have used reasonable diligence to have informed himself of all the facts. If a person be ignorant of his interests in a certain transaction, no negligence is imputable to him for failing to inform himself of his rights, but if he is aware of his interest, and knows that proceedings are pending, the result of which may be prejudicial to such interests, he is bound to look into such proceedings so far as to see that no action is taken to his detriment.

5. FORECLOSURE—*Laches May be Considered by the Court Without Being Raised by the Pleading.*—In a petition to intervene in a suit to foreclose a mortgage the court may give laches consideration as a ground for refusing leave to intervene without waiting for it to be raised as an objection by the pleadings.

6. APPELLATE COURT PRACTICE—*In Granting Leave to File Petition to Intervene.*—Granting an application for leave to file an intervening petition after a cause has proceeded for a long period of time is a matter resting in the sound discretion of the chancellor of the trial court and his decision will not be reviewed by this court unless there has been an abuse of that discretion.

**Foreclosure of a Trust Deed.**—Intervening petition. Error to the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding. Heard in this court at the October term, 1901. Affirmed. Opinion filed March 6, 1902.

In the year 1892, the Medinah Temple Company, a corporation, of Chicago, Illinois, was organized, and soon after began the erection of a fourteen-story office and society building known as the " Medinah Building." Before the building was completed the company ran out of money, and the contractors ceased or threatened to cease work. In order to pay for what was already done and to complete the building, the company issued $400,000 of bonds, payable to bearer, and secured by a trust deed conveying the said building and other property to The Illinois Trust & Savings Bank, as trustee. These bonds ·were executed March 1, 1894, and were all sold, the larger portion being delivered to contractors in payment for the work on the building. A resolution of the board of directors, passed February 15, 1894, and recorded in the minute book of the company, recited the purpose of said issue of bonds to be that

" Whereas, said company has commenced the erection of a fourteen-story building upon said real estate, and has no

money or funds wherewith to complete the same, or to carry out the purposes or objects for which said company was incorporated; and

" Whereas, it is necessary for the purpose of completing said building, and for other corporate purposes, that said company make and issue its bonds to the amount of four hundred thousand dollars, to be secured by a trust deed upon the said leasehold interest and estate, building and other property of said company," and this resolution was set forth in the trust deed.

On May 17, 1897, a bill to foreclose this trust deed was filed in the Circuit Court of Cook County.    To this bill the Medinah Temple Company and all the tenants in the building were made defendants.    The Medinah Temple Company was defaulted.    The Ancient Arabic Order Nobles of the Mystic Shrine, one of the defendants, filed an answer and also a cross-bill, claiming to be a tenant and a creditor of the Medinah Temple Company, and as such tenant entitled to rights superior to the lien of the trust deed. The cause was referred to a master in chancery.    Evidence was heard before the master to show that certain subscriptions to the capital stock of the company were never paid, as indicated by the master's report.    This evidence was introduced in part in April, 1898.    The master found in favor of the complainant, and recommended a decree of foreclosure, and his report was filed November 24, 1900. On May 16, 1901, pending a hearing on the master's report, the plaintiffs in error asked leave to file an intervening petition in the foreclosure suit.    The petition alleged that they were stockholders of the Medinah Temple Company and, as such, interested in the foreclosure proceedings, and were necessary parties therein; that the company had never been legally organized, and that there was in fact no such corporation, because certain subscriptions to the capital stock were fictitious; that the bond and trust deed were, therefore, void for want of proper authority to issue them; that the bonds were sold for less than par value; that such sale for less than par value was a fraud on petitioners, and asked leave to be made defendants; that the

first and second board of directors be also made defendants, that the foreclosure suit be enjoined; that the bondholders be required to answer as to their ownership of the bonds; that all bonds in the hands of parties having notice of the frauds alleged be canceled; that the petitioners be decreed the owners of the building. The petition also charges that "all said bonds in the hands of the present holders are affected with notice of the fraudulent schemes aforesaid, and are therefore tainted with fraud, and that said bonds should be canceled." The court denied the motion for leave to file the petition.

This writ of error seeks to review and reverse that order.

ALEX M. WOOLFOLK, attorney for plaintiffs in error.

EUGENE E. PRUSSING and CASTLE, WILLIAMS & SMITH, attorneys for defendants in error.

MR. JUSTICE SEARS delivered the opinion of the court.

The only question presented for determination is as to the sufficiency of the petition by which plaintiffs in error sought to intervene and to interpose a defense to the foreclosure suit. We will consider the various grounds upon which it is urged that the plaintiffs in error were entitled to be heard.

The contention that plaintiffs in error, as stockholders of the corporation which owned the equity in the mortgaged premises, were necessary parties defendant to a suit to foreclose, is not tenable. The corporation represents the stockholders in bringing and defending suits to which the corporation is a party. 3 Cook on Corporations (4th Ed.), Sec. 844; Ward v. Farrell, 97 Ill. 593; Great Western Tel. Co. v. Barker, 56 Ill. App. 402.

In Great Western Tel. Co. v. Barker, *supra*, this court, by Mr. Justice Cartwright, said:

"The stockholder, by becoming a member of the corporation, agrees that his interest as such shall be managed by the corporation. The rendition of judgments against it may extinguish the value of his interest, and yet he has

Gunderson v. Illinois Trust & Savings Bank.

no right as a stockholder to appear and defend for it in suits."

It is not intended to intimate that in a case where the stockholders have a right upon well defined ground to defend their own interests in a suit against the corporation, they may not, as stockholders, be permitted, in the discretion of the trial court, to intervene. But upon the mere ground that they are stockholders, and therefore *per se* necessary parties defendant, we hold that no right to intervene exists.

The facts alleged which would establish that the capital stock of the Medina Temple Company was not in good faith fully subscribed for when the report of the commissioners was made, upon which report the charter of the corporation was issued, do not, in our opinion, afford any valid defense to the foreclosure suit. They do show, if true, that there was fraud in the organizing of the corporation, in that there were fictitious subscriptions made in order to obtain a charter, which subscriptions were abandoned immediately after a charter was secured. The allegations of the petition in this behalf are as follows:

That May, Stiles, Powell, Luce, Knight and Drake made application to the Secretary of State for a license to open books of subscription for the capital stock of the Medinah Temple Company, and the capital stock was fixed in such application at $500,000; that a license to open said books was granted in pursuance of the application, and said parties designated as commissioners; that said parties urged as the chief inducement for said subscriptions, that they would be used to furnish a home for the Shrine, and that members of the Masonic Order subscribed considerable sums for said stock; that the total sum so subscribed amounted to 11,168 shares, of the value of $116,800, the greater part of which has been paid; that subscriptions steadily increased, but said parties became anxious to hasten the completion of the subscriptions to $500,000, and the said May, Stiles, Powell and Luce each subscribed 4,580 shares, or the sum total of $183,200 altogether; that said

parties were wholly unable to pay the amount so subscribed, or any material portion thereof, and had no intention of doing so; that for the purpose of completing said apparent subscription for said stock to the amount of 5,000 shares, the said parties procured one John Eason to subscribe for 2,000 shares of said stock, and petitioners charge that said Eason neither had the ability to pay nor any intention of ever paying said subscription. That thereafter the stockholders were convened for the purpose of electing directors, etc., and, by means of the fictitious stock aforesaid, the said fictitious subscribers did elect four of their own members as members of said board, to wit, May, Stiles, Powell and Luce; that May was elected president; Stiles, secretary; Powell, vice-president and Luce, treasurer; that after said election of directors and officers the commissioners forwarded their report to the Secretary of State, who had no knowledge of the secret intention of said parties, and did issue a charter for the said Medinah Temple Company, which bears date August 25, 1892; that immediately after receiving said charter, to wit, on August 29th, as shown by the company's records, the said board held a meeting at which May, Stiles, Powell and Luce each surrendered the stock so subscribed by them, alleging as their reason, their utter inability to pay for the same, and acknowledged that they had subscribed for the same for the mere purpose of effecting an organization; that such surrender was accepted by the board, such action and allegations being made a part of the minutes of the meeting and recited therein; that on October 13, 1893, the said John Eason also surrendered his stock, which was accepted and subscription canceled; that neither did petitioners nor any other *bona fide* subscriber for stock, not elected a director of the company, have any knowledge whatever of such surrender of the bogus stock and the acceptance thereof.

These facts, if true, would be very pertinent as bearing upon the *bona fides* of the stock subscription, and perhaps the individual liability of those who, after having thus

accomplished a fraudulent organization of the corporation, proceeded to incur obligations in its name. But we are unable to perceive how they constitute any valid defense against the right of the bondholders to foreclose. The petition alleges " That bonds were issued in pursuance of the plan adopted to the amount of $400,000, secured by trust deed as aforesaid, and said bonds were negotiated to contractors in payment for past and future work."

So far as the allegations of fraud in the method of organizing the corporation are concerned, the learned trial court was right in refusing to allow plaintiffs in error to intervene for the purpose of defending upon that ground against the foreclosure. 1 Cook on Corporations (4th Ed.), Sec. 184, *et seq.;* 2 Cook on Corporations, Sec. 637; Wheelock v. Kost, 77 Ill. 296; Hickling v. Wilson, 104 Ill. 54; Hudson v. Greenhill Co., 113 Ill. 618; American Loan & Trust Co. v. M. & N. W. R. R. Co., 157 Ill. 641; Thomas v. St. L., B. & S. Ry. Co., 164 Ill. 634; Curtis v. Tracy, 169 Ill. 233.

It is urged that the bonds were sold at less than par value, and that such sales were a fraud upon the plaintiffs in error as stockholders, and therefore they have a right to intervene and defend against this foreclosure suit. The allegations of the petition in this behalf are, in substance, as follows :

" That the payments made by the *bona fide* subscribers to capital stock constituted the only security for the bonds issued; that the bonds were sold at less than par value, and for the most part at fifty cents on the dollar, and that large amounts of capital stock were issued gratuitously as a bonus for the parties taking such bonds; that A. M. Eddy, one of the board of directors of the company, ' being a capitalist and fully aware of his responsibilities under section 18 (of the corporation act), did form a scheme to evade such responsibility, and at the same time make a profitable speculation in said bonds at the expense of said company, and for such purpose did enter into a combination with certain other capitalists to purchase said bonds issued and to be issued at a low figure for cash, and thus obtain complete control of such pretended corporation by means of the bonus stock furnished, as aforesaid, without charge to the holders of said bonds; that some of said capitalists and

speculators were also engaged in the business of furnishing
material to building in process of construction by the cor-
poration, and for the purpose of securing for said parties
all the remainder of said bonds and stocks left undisposed
of, the said Eddy and the other directors of said pretended
corporation did agree with said capitalists that they should
supply said building therewith at such high rates as to make
large profits thereon, at the expense of said company, and
did issue to said parties and their companies in payment
therefor large amounts of said bonds and bonus stock, and
petitioners charge, on information and belief, that said
bonds were received at less than fifty cents on the dollar
in payment for such material so furnished. Petitioners
further charge, on information and belief, that such scheme
was so successfully consummated that said capitalists and
speculators secured all or nearly all the bonds and bonus
stock aforesaid issued by the board of directors of said pre-
tended corporation, and are now the owners thereof,
although said bonds in many instances were left in the hands
of the original holders, for the purpose of better conceal-
ment of said fraudulent scheme,' etc. 'Petitioners further
charge that all said bonds in the hands of the present
holders are affected with notice of the said fraudulent
schemes, and should be canceled by the final order and
decree of this honorable court; that said Illinois Trust and
Savings Bank, trustee, now holding said bonds pending fore-
closure proceedings, should be required to retain the same
in its custody in order to prevent their transfer to pretended
innocent holders and further attempts to defraud your
petitioners.'"

The allegations relate chiefly to the fraudulent conduct
charged in disposition of capital stock and control of the
corporation through such stock. Such allegations, as has
been above announced, can not operate as a defense to the
foreclosure. The only part of the allegations which goes
to the bonds is the charge that the directors of the com-
pany agreed with certain parties that they should supply
the building with materials "at such high rates as to make
large profits thereon," and that the bonds were received in
payment for such materials at less than fifty cents upon the
dollar. It is elsewhere alleged in the petition that these
bonds, to the amount of $400,000, which were thus disposed
of at half their face value or less, were in fact secured only

by the amount of the paid-up stock subscriptions, which consisted of considerably less than $200,000. The allegation is, in effect, therefore, simply a charge that the contracts were let to the contractors at such "high rates as to make large profits" for the contractors. If it be assumed that the fact thus charged is sufficient to constitute a defense to the suit of foreclosure, the question arises, can the stockholders intervene and make for themselves and in their own interest the defense which the directors do not make (if they could) for the corporation upon this ground.

While it is true that the corporation is supposed to represent the shareholders in all litigation to which the corporation is a party, and the shareholders are not necessary parties, yet it is also true that in cases where directors have fraudulently refused to properly protect the interests of the corporation, and hence the interests of shareholders in litigation, shareholders have been permitted to appear and act in such litigation for their own protection.

In Bronson v. LaCrosse R. R. Co., 2 Wall. 283, a foreclosure suit was brought against railway companies to foreclose a mortgage securing bonds issued by one of the companies. A stockholder of one of the companies, which defaulted, appeared and obtained leave of court to intervene and defend in the name of the corporation. The grounds upon which he was permitted by the trial court to thus appear and defend, were that (as he alleged) the bonds upon which the suit to foreclose was originally brought were issued, and the mortgage was made, in violation of the charter of the company and in fraud of the stockholders and creditors. The Supreme Court held that while the order allowing him to defend for the corporation was improper because a stockholder could not be permitted to represent the corporation in litigation, yet the stockholder might be allowed, in the discretion of the trial court, to become a party to the litigation for the purpose of protecting his own interests as stockholders against unfounded and illegal claims against the corporation, where the directors of the corporation fraudulently refused to defend. But the

court treats it as a matter resting in the discretion of the trial court, and says:

"It is true, the remedy is an extreme one, and should be admitted by the court with hesitation and caution; but it grows out of the necessity of the case and for the sake of justice, and may be the only remedy to prevent a flagrant wrong."

But while it was thus within the power of the trial court in its discretion to permit plaintiffs in error to intervene for the purpose of defending their interests as stockholders if they had a valid defense, it still remains to be determined whether the trial court acted in abuse of such discretion in this instance in refusing leave. We are of opinion that if the allegations before noted as to fraudulent disposition of the bonds are of themselves sufficient to constitute a defense to the foreclosure, then the fraudulent failure of the directors to defend might be regarded as sufficient to warrant the court in permitting plaintiffs in error to intervene, if there were no other question. But another question does arise upon the petition which the plaintiffs in error presented to the court, and that is as to laches. It appears from the petition and the record that the subscriptions to capital stock complained of as fraudulent were made in 1892, and the stock thus subscribed for was surrendered in the same year; that the resolution of the board of directors providing for the issue of the bonds in question was adopted in February, 1894; that the suit to foreclose was begun in May, 1897; that considerable evidence was taken before a master in chancery in the foreclosure suit as early as April, 1898, by which the facts as to purchases of bonds in question were disclosed; and that this petition for leave to intervene was first presented to the court in May, 1901.

The learned trial court, in view of all these various steps in the proceeding, by some of which plaintiffs in error should have been (and now state that they were) apprised of the conditions of which they now complain, might properly decline, in the exercise of sound discretion, to allow a defense by plaintiffs in error at this late day unless the delay was in some manner excused. The only allegation

of the petition which seeks to excuse the delay is as follows :

" Petitioners further represent that they have held no position in the Medinah Temple Company, except that of stockholders, and, by means of the bogus stock aforesaid, have been excluded from all participation in the management of said company; that they have been kept in ignorance of all the foregoing facts, and had no knowledge of the same until the past few weeks; that in the proceedings incident to said attempted foreclosure, the evidence introduced, including the records of said Medinah Temple Company, brought out many of the foregoing facts, and the master's report thereon has been brought to the attention of your petitioners within the past few weeks, and they have thus for the first time learned of the schemes devised to defraud them of their rights."

But this very evidence taken before the master, by which plaintiffs in error allege that they became informed as to the facts relied upon, was heard by the master in considerable part as early as in April, 1898, more than three years before the plaintiffs in error first sought to avail of such facts as a defense. The trial court, aware of that state of facts, might well hold that the laches of the plaintiffs in error had been so great as to make it proper to refuse leave to intervene at this point in the proceeding.

It is true that the petition states that the "said capitalists and speculators who secured all or nearly all of the bonds * * * are now the owners thereof." But this allegation is upon information and belief only. The additional allegation that "all said bonds in the hands of the present holders are affected with notice of said fraudulent schemes," is the statement of a conclusion, and is to be taken in connection with the preceding statement of facts, which latter was upon information and belief only. The rule as to laches precluding relief is a yielding rule, to be applied according to the circumstances and equities of each case. Here it was to be applied by the trial court to govern it in the exercise of its discretion. We are not prepared to hold that the discretion was abused. Such delay as was here made by plaintiffs in error in asserting their rights might

well be held to preclude a right to intervene. 3 Cook on Corporations, Sec. 848; Williams v. Rhodes, 81 Ill. 571; Connelly v. Rue, 148 Ill. 207; Levin v. C. G. L. & C. Co., 64 Ill. App. 393; Harwood v. Railroad Co., 17 Wall. 78; Foster v. Mansfield R. R. Co., 146 U. S. 88; Johnston v. Standard Co., 148 U. S. 360; Farmers' L. & T. Co. v. R. V. R. R. Co., 69 Fed. Rep. 9.

In Foster v. Mansfield R. R. Co., *supra*, which was a suit to foreclose, the court said :

" The defense of the want of knowledge on the part of one charged with laches is one easily made, easy to prove by his own oath, and hard to disprove; and hence the tendency of courts in recent years has been to hold the plaintiff to a rigid compliance with the law which demands, not only that he should have been ignorant of the fraud, but that he should have used reasonable diligence to have informed himself of all the facts. Especially is this the case where the party complaining is a resident of the neighborhood in which the fraud is alleged to have taken place, and the subject of such fraud is a railroad with whose ownership and management the public, and certainly the stockholders, may be presumed to have some familiarity. The foreclosure of this road could not have taken place without actual, as well as legal, knowledge of the fact by its stockholders, and if they believe they had any valuable interest to protect, it was their duty to have informed themselves, by an inspection of the records of the court in which the foreclosure was carried on, of what was being done, and to have taken steps to protect themselves, if they had reason to believe their rights were being sacrificed by the directors. If a person be ignorant of his interest in a certain transaction, no negligence is imputable to him for failing to inform himself of his rights; but if he is aware of his interest, and knows that proceedings are pending the result of which may be prejudicial to such interests, he is bound to look into such proceedings so far as to see that no action is taken to his detriment."

This announcement is peculiarly applicable to the facts of this case.

In Farmers' Loan & T. Co. v. R. V. R. R. Co., *supra*, it was held that after a decree of sale and commencement of advertising it is too late for a bondholder to intervene, when

Gunderson v. Illinois Trust & Savings Bank.

he had known that the proceedings were pending. The court said:

" To permit a cause which has seemingly moved in such an orderly and customary way to be interrupted at so late a stage, and at so critical a point in its progress toward a final decree, can only be justified on the ground that otherwise there would be a practical denial of justice to the petitioner, caused by the deprivation of his right to have his day in court. And it is well settled that he who seeks to obtain such interference by a court of equity must thoroughly clear himself of any suspicion of laches in making his application. * * * The application of the petitioner is addressed to the discretion of the court."

It is urged by the learned counsel for plaintiffs in error that the ground of laches should have been presented by plea or answer of defendants in error to the petition. We are of opinion that the trial court might give it consideration as a ground for refusing leave to intervene without waiting for it to be raised as an objection by the pleadings of defendant in error. The evidence had all been taken, and the cause, after some years of delay, had reached the master's report. The court was not bound to permit a further delay by permitting the petition to be filed and then wait for the answer thereto to raise as objection to it the ground of laches, as to which the court was already informed by evidence in the suit and by the allegations of the petition itself. As a reason for exercising the discretion of the court in denial of leave to file the petition, the laches of plaintiffs in error might well be considered. The permitting of intervention in this suit was largely a matter of discretion. Farmers' L. & T. Co. v. R. V. R. R. Co., *supra;* Wolverton v. Taylor, 157 Ill. 485.

What is said in the case last noted in relation to an amendment sought to be made to a bill of complaint after the cause had proceeded for a long time, is equally applicable to an application for leave to file an intervening petition. The court said:

" Ordinarily such amendments will be allowed at the hearing and before final decree, when the court can see they are in the furtherance of justice and the opposite party will

not be prejudiced thereby. But it is a matter resting in the sound discretion of the chancellor in the trial court, and his decision will not be reviewed by this court unless there has been an abuse of that discretion. * * * It was said by Mr. Justice Harlan in Hardin v. Boyd, 113 U. S. 761, that ' great caution should be exercised where the application comes after the litigation has continued for some time, or when the granting of it would cause serious inconvenience or expense to the opposite party.' "

Whatever rights the plaintiffs in error may have in relation to the management of this corporation, which may be asserted by other proceedings, we are of the opinion that, so far as this suit to foreclose is concerned, the trial court can not be held to have abused its discretion in refusing to permit them to intervene.

The order of the court dismissing the cross-bill of other litigants is not reviewed upon this writ of error.

So far as the interests of the plaintiffs in error are involved, the decree is affirmed.