JACOB WOLVERTON *et al.*

*v.*

GEORGE H. TAYLOR & Co. *et al.*

*Filed at Ottawa October 11, 1895.*

1. APPEALS AND ERRORS—*objection not urged on first appeal cannot be raised on second appeal.* Objection that a bill to enforce liability of officers of a corporation for creating indebtedness in excess of the capital stock could not be maintained because the complainant's debt was not reduced to judgment cannot be raised on a second appeal, where the bill was held sufficient on a former appeal from a judgment on demurrer, the only question then argued being as to the Statute of Limitations.

2. SAME—*what is not an abuse of discretion in refusing amendment.* Refusal of the trial court, after final hearing, to permit an amendment of a bill in chancery making the real party in interest complainant, will not be disturbed as an abuse of the court's discretion, in a case which has been pending upon the docket several years.

3. CORPORATIONS—*personal liability of officers for excessive indebtedness—who may complain.* Officers of a corporation cannot be held liable, under the statute, for assenting to the creation of an indebtedness exceeding the capital stock, upon a bill filed by parties who fail

to prove that the corporation was indebted to them at the time of filing the bill.

4. SAME—*liability of officers for excessive indebtedness arising on accommodation paper.* An officer of a corporation which has exchanged notes with another corporation, under an understanding that each shall take care of the notes received, is not a *bona fide* creditor of the other corporation where he takes up its notes so received in the interest of the corporation represented by himself, so that he may maintain a bill to enforce directors' statutory liability.

5. SAME—*assignee for collection, only, cannot invoke statute against directors.* One to whom notes are assigned, as a mere matter of convenience, for collection, without beneficial interest, cannot maintain a suit against directors of the corporation issuing such notes to enforce their statutory liability for assenting to excessive indebtedness.

*Wolverton* v. *Taylor & Co.* 54 Ill. App. 380, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. WILLIAM G. EWING, Judge, presiding.

CONSIDER H. WILLETT, for appellants.

TENNEY, McCONNELL & COFFEEN, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This cause was before us at a former term, and is reported in 132 Ill. 197. The questions involved in that appeal arose on demurrer to the bill, and had relation to the Statute of Limitations. A statement of the general facts as alleged in the bill, and a discussion of the nature of the liability of directors and officers who assent to the creation of indebtedness of the corporation in excess of the amount of its capital stock, will be found in the opinion in that case. It was there held, following the decision in *Low* v. *Buchanan,* 94 Ill. 76, "that directors and officers of stock corporations who incur liabilities under the section in question, become bound and answerable, not to some particular creditor, but, in the language of the act, to the *creditors,*—that is, all the creditors. This

construction puts all the creditors upon a perfect equality, and is in conformity with the express words of the act." It was also then held, that "the officers, if liable at all, are liable to all the creditors of the corporation,— those existing prior to the contract creating the excessive indebtedness, those whose debts are created thereby, and also those who may afterwards become its creditors." When the case went back to the Superior Court the complainants amended their bill, and alleged that George H. Taylor & Co. was insolvent and had ceased to do business, leaving complainants' demands unpaid, and defendants answered. The court dismissed the bill, because it appeared that the complainants had not reduced their alleged indebtedness to judgment against the corporation in a court of law before filing their bill. On appeal to the Appellate Court for the First District that decree of the Superior Court was reversed and the cause remanded, where, on a full hearing of the cause, the bill of complaint was dismissed for want of equity, which last decree has been affirmed by the Appellate Court, and this appeal is now prosecuted to this court from the judgment of affirmance.

The bill was filed in 1888. The case has been in the Appellate Court three times, and this is its second appearance in this court, and it would seem that its final decision should not much longer be postponed.

The first question raised by appellees on this appeal is, that the judgment of the Appellate Court should be affirmed because the bill is in the nature of a creditor's bill to reach equitable assets, and cannot be maintained because the alleged indebtedness had not been reduced to judgment before the bill was filed. This question was not raised on the demurrer on the former appeal to this court, when it should have been if the defendants desired to avail themselves of it, but the bill was held sufficient and the judgment of affirmance of the Appellate Court was reversed on the ground then urged,—that the cause

of action was not, on the face of the bill, barred by the Statute of Limitations. But if the question were treated as now properly before us, we would be inclined to the opinion that no judgment at law was necessary, and to coincide with the views on that question expressed by Mr. Justice MORAN in the opinion of the Appellate Court on the second appeal to that court, reported in 43 Ill. App. 424. Various questions are raised in argument by counsel, but we think the judgment should be affirmed on the meritorious ground that the evidence does not sufficiently show that the corporation was indebted to the complainants at the time of the filing of the bill, and if the corporation was not so indebted, the appellees, as officers, could not be held liable, under the statute, for assenting to the creation of an indebtedness in excess of the amount of the capital stock, on a bill filed by parties who fail to show that they are *bona fide* creditors of the corporation.

It is established that the defendants Taylor and Longley, as officers of George H. Taylor & Co., assented to the creation of an indebtedness largely in excess of the capital stock. The complainant Wolverton seeks to recover on two notes made by George H. Taylor & Co. to Lucius Clark & Co., another corporation,—one for $820.50, dated October 17, 1882, due in five months, and one for $1250, dated November 11, 1882, due in four months. These notes had been endorsed by the payee to and discounted by the St. Joseph County Savings Bank of South Bend, Indiana, before maturity, in due course of business, which bank afterwards assigned them to its vice-president, the complainant Wolverton, for collection merely. The complainant Charles A. Clark seeks to recover on six similar notes, given at the same time by the same payer to the same payee, payable at or about the same time as the Wolverton notes, and aggregating upwards of $5000, without interest. These notes were endorsed in blank by the corporation Lucius Clark & Co., the payee, and by

Lucius Clark personally, and sent to Charles A. Clark, or to the Logansport Paper Company, (it is not very clear which,) to be negotiated and discounted.    Charles A. Clark was a brother of Lucius Clark, and was president, and practically the owner, of the Logansport Paper Company, in which company Lucius Clark was also a stockholder.    The Logansport Paper Company, by Charles A. Clark, its president, also endorsed the notes in blank and delivered them to the Logansport National Bank, and remitted, or else Charles A. Clark remitted, the proceeds, less the discount of eight per cent, to Lucius Clark & Co.

It is practically impossible, from the evidence, to determine when Charles A. Clark was acting for himself, individually, and when for and on behalf of the Logansport Paper Company, of which he was president; but we are satisfied from the evidence that he practically owned and controlled the paper company, and in these transactions their interests were identical, and that he is not equitably entitled to any advantage in this suit which the paper company could not claim.

Lucius Clark & Co. failed, and soon after the Logansport Paper Company also failed, and these failures precipitated the failure of George H. Taylor & Co.

Charles A. Clark took up, as he testified, from the bank, these six notes and gave the bank his own notes, payable in five years, upon which, although overdue for several years, he had paid only $175.    The bank re-delivered the six notes sued on, to him, without its endorsement, and he afterward struck out the endorsement of the Logansport Paper Company and the individual endorsement of Lucius Clark, and wrote over the blank endorsement of Lucius Clark & Co. the special endorsement, "Pay to the order of Charles A. Clark."

When the eight notes in question were given by George H. Taylor & Co. it did not owe the payee, Lucius Clark & Co., anything, but issued these notes, with a large amount of other notes, aggregating about $80,000, at the urgent

request of the payee as an accommodation, and took in return the paper, some of Lucius Clark & Co. and some of the Logansport Paper Company, of the same aggregate amount. It was understood that the parties were to use this paper in discounts, but each was to take care of and pay the paper thus received, so as to save the makers harmless. George H. Taylor & Co., although it received an equal amount of the paper of Lucius Clark & Co. and of the Logansport Paper Company for that issued to Lucius Clark & Co., and discounted it in the market, afterward paid and took up all such paper, but Lucius Clark & Co. failed to perform its part of the arrangement in this respect, and the notes in suit and others were left outstanding, as before stated.

George H. Taylor testified that Charles A. Clark was present when the arrangement was made to issue the paper. This, however, Clark denied, but he did not deny the testimony of Taylor that after the notes sued on by him had been discounted at the Logansport National Bank, he told Taylor that he had secured their payment by a mortgage on the mill of the Logansport Paper Company and that George H. Taylor & Co. would never be called on to pay them, and that after he took up the paper he frequently saw the defendant Taylor, and had money in his hands belonging to Taylor, but never mentioned these notes, or his claims as the holder of them. Nor did he deny the evidence that on the failure of the Logansport Paper Company he acquired its mill and property. He gave no account of how he acquired the property, nor of any proceedings to foreclose the mortgage, nor of any proceeds derived from the sale of the property, except to say that nothing was realized from the mortgage.

The defendant Longley testified that the six notes now sought to be collected by Clark were issued in lieu of six similar notes issued by the Logansport Paper Company, which, after being discounted, were paid and taken

up, not by the paper company, but by George H. Taylor & Co. It is plain, therefore, that had the paper company brought this bill, George H. Taylor & Co. and the other defendants, its officers, would have had a complete defense, for while we think the evidence shows that the paper was issued as mutual accommodation paper, still if it were considered that one series of notes was given in exchange and as a consideration for the other, they would, as between the parties, have been a good offset for each other. It would seem clear that George H. Taylor & Co. would be no more bound to pay its notes assigned to the Logansport Paper Company than that company would be to pay its notes assigned to George H. Taylor & Co. Moreover, while the evidence tends strongly to show that Charles A. Clark, when he took up these notes from the bank, was acting for or in the interest of the paper company, it also tends to show that he was then carrying out the original arrangement,—that is, to take care of the accommodation paper received by him or his company, so as to hold the maker harmless. When he took this paper up from the bank, he knew, we think the evidence shows, that George H. Taylor & Co. had received an equal amount of paper of his company, which it, George H. Taylor & Co., was bound also to protect, and his acts and statements at the time, and for some considerable time thereafter, lead to the conclusion that he did not understand that he was acquiring, individually, by purchase, negotiable paper from an innocent holder for value, and would thereby be enabled to stand in the shoes of such holder and enforce the collection of the paper against the maker, but rather that he was taking care of,—paying or taking up, to use his expression, —paper which he was in duty bound to take up.

There is no allegation in the bill that the bank acquired this paper as an innocent holder for value, and had assigned the same to Clark so as to enable Clark to claim the benefit of the bank's position, and even if there had

been, we do not think the bill would have been sustained by the proof, as before shown. At any rate, we are not disposed to disturb the findings of the Superior and Appellate Courts, where, as here, much of the testimony was heard in open court, and is sufficient to support the decree rendered.

We forbear any discussion of the question raised in the argument as to whether or not the statutory liability of the defendant officers sought to be enforced would pass with the indebtedness, by assignment, so as to enable the assignee to enforce the same, as being unnecessary to the decision of the case.

As to the two notes assigned to Wolverton, it was proved, and not disputed, that Wolverton had no interest in them. They still belonged, at the time of filing the bill and of the hearing, to the St. Joseph County Savings Bank. The bank assigned them to Wolverton as a mere matter of convenience, for collection. Just before the filing of the bill, complainants' solicitor struck out the endorsement to the bank and from the bank to Wolverton, and made the endorsement of Lucius Clark & Co. one direct to Wolverton. The bank had taken security from Lucius Clark & Co., for these notes and others, by way of a chattel mortgage on some of that company's personal property. This mortgage, with others securing other creditors, was turned over to Wolverton as trustee, who took possession of the property, sold it and distributed the proceeds. The *pro rata* amount to be applied on the indebtedness secured by the chattel mortgage, which included the two notes sued on by Wolverton, was $5421.03, a ratable proportion of which, it would seem, should have been applied in part payment of these two notes, but by direction of Lucius Clark no part of the proceeds was so applied. As Wolverton was a mere nominal holder of the notes, having no beneficial interest in them, but all such interest being in the St. Joseph County Savings Bank, the bank, and not Wolverton, was the proper party

to file the bill.    It is a well recognized rule that in equity the party having the beneficial interest in the subject matter of the suit must sue in his own name.    *Smith* v. *Brittenham*, 109 Ill. 540; 1 Daniell's Ch. Pr. secs. 192, 197, note 7; *Rogers* v. *Traders' Ins. Co.* 6 Paige's Ch. 585; *Field* v. *Maghee*, 5 id. 539; *Chisholm* v. *McDonald*, 30 Ill. App. 176; *Oakey* v. *Bend*, 3 Edw. Ch. 482.

About ten days after the cause had been finally heard on its remandment by the Appellate Court on the second appeal, and while the chancellor held the same under advisement, the complainant Wolverton presented his sworn petition, asking leave to amend the bill of complaint by setting out the endorsements to and discount of the notes by the St. Joseph County Savings Bank before maturity, and the assignment to Wolverton, for the purpose of obtaining judgment, and, while protesting that the suit may be maintained in the name of Wolverton, asking that the savings bank be made a party complainant.    A similar petition was presented by Charles A. Clark for leave to amend the bill by alleging the facts of the discounting of the six notes by the Logansport National Bank, and to restore the endorsements on the notes as they stood before they were stricken out.    These petitions were denied, and this action of the trial court is assigned for error.

As to the amendment offered by Clark, it would not, as we have seen, have enabled him to maintain the bill, in view of the evidence.    But it is not so clear that the St. Joseph County Savings Bank would not have been entitled to recover, had it been a complainant in the bill, the balance, if any, due on the notes after deducting so much of the proceeds of the sale of the mortgaged property as should have been applied on the two notes.    Even if there was no indebtedness of George H. Taylor & Co. to Lucius Clark & Co., by virtue of the notes in question being treated as accommodation paper, still, when they passed to the savings bank, in due course of business, for

value, George H. Taylor & Co. became indebted to the bank, and that indebtedness being in excess of the amount of the maker's capital stock, and it having been assented to by the defendant officers, they would, under the statute, have become liable unless some other sufficient defense were shown. Ordinarily such amendments will be allowed at the hearing and before final decree, when the court can see they are in the furtherance of justice and the opposite party will not be prejudiced thereby. But it is a matter resting in the sound discretion of the chancellor in the trial court, and his decision will not be reviewed by this court unless there has been an abuse of that discretion. (*Hewitt* v. *Dement*, 57 Ill. 500; *Hoyt* v. *Tuxbury*, 70 id. 331; *Booth* v. *Wiley*, 102 id. 84, and cases cited; 1 Ency. of Pl. & Prac. 463.) The bill had been amended several times in the eight years in which it was under review in the trial court and on appeal, and it would require a clear showing of an abuse of discretion, in such a case, before this court would be authorized to set aside the decree because of the refusal of the trial court to permit the amendment asked to be made after the final hearing. It doubtless appeared to the trial court that such an amendment of the bill would have required an amended answer and a further trial upon the new phase of the case which might then have been presented.

As the bill stood at the trial, it alleged the assignment of the two notes by the payee, Lucius Clark & Co., to Wolverton. The answer denied that George H. Taylor & Co. was so indebted, and denied that Wolverton was an innocent holder, for value, of the paper before maturity. When this answer came in the complainants might have then amended their bill, if they wished to do so at all. The liability to Wolverton was denied, and they were charged with knowledge of the rule in equity that the beneficial owner must sue. They were then in possession of all the facts. Wolverton had been put for-

ward by the savings bank as its agent to bring suit, and it is now in no position to insist that its rights are cut off, except by its own negligence.    We think the case should be distinguished from *Thomas* v. *Adams*, 30 Ill. 37, *Marsh* v. *Green*, 79 id. 385, *Howell* v. *Peoria*, 90 id. 104, and *Shannahan* v. *Stevens*, 139 id. 428.    It was said by Mr. Justice HARLAN in *Hardin* v. *Boyd*, 113 U. S. 761, that "great caution should be exercised where the application comes after the litigation has continued for some time, or when the granting of it would cause serious inconvenience or expense to the opposite party." (*Richmond* v. *Irons*, 121 U. S. 47.)    In *March* v. *Mayers*, 85 Ill. 177, Mr. Justice BREESE said:    "We believe it to be a rule in chancery, when a demurrer going to the merits of the whole bill is sustained for want of equity it is not the practice to allow amendments so as to make a new case with new parties."    That the trial court, in its discretion, might have allowed the amendment on just and reasonable terms, without error, cannot be denied, but it was not error to refuse it.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*