# Louis A. Levin v. Chicago Gas Light & Coke Company et al.

1. ILLEGAL TRUSTS—*Relief in Equity.*—Equity will leave one who had been engaged in illegal conduct and seeks relief from its results, in the position where it finds him. He can not be relieved unless he himself is free from participation in the fraud.

2. PLEADINGS—*To be Construed Most Strongly Against the Pleader.*—Such construction will be given to the pleading of a party as is most unfavorable to him.

3. COMBINATIONS BY CORPORATIONS—*Who is Estopped from Complaining.*—A stockholder who has participated in illegal acts and conspiracies, and partaken of the fruits thereof, may not tear down the structure he has helped to rear, simply because he did not know that he had been engaged in illegality and conspiracy.

4. ULTRA VIRES—*Laches by Stockholders.*—To entitle stockholders to the summary interference of a court, they must apply so recently after the doing of the acts complained of, that the court may stop or undo the wrong to them without doing equal or greater wrong to some other person, or, in other words, if a stockholder wants protection against the consequences of an *ultra vires* act, he must ask for it with sufficient promptness to enable the court to do justice to him without doing injustice to others.

5. LACHES—*By Stockholder.*—Shareholders can not lie by, sanctioning, or by their silence at least, acquiescing in, an arrangement which is *ultra vires* of the company to which they belong, watching the result; if it be favorable and profitable to themselves to abide by it, and insist on its validity, but if it prove unfavorable and disastrous, then to institute proceedings to set it aside.

**Bill for Relief.**—Appeal from the Circuit Court of Cook County; the Hon. O. H. HORTON, Judge, presiding. Heard in this court at the March term, 1896. Affirmed. Opinion filed June 1, 1896.

ALFRED E. HAWES, attorney for appellant, contended that a dissenting stockholder may enjoin the *ultra vires* acts of the directors or majority of stockholders. Cherokee Ins. Co. v. Jones, 52 Ga. 276; Munt v. Shrewsbury Ry. Co., 13 Beav. 1; Wiswall v. Greenville R. R. Co., 3 Jones' Eq. 183; Maniwell v. Midland R. R. Co., 1 Hem. and M. 130; Central R. R. v. Collins, 40 Ga. 582; Salomons v. Laing, 12 Beav. 339; Hartford v. Creswell, 5 Hill 383; Ashton v. Burbank, 2 Dill 435; Cook on Stock, etc., 682 *et seq.*

The smallness of the stockholder's interest will not prevent his instituting a stockholder's suit to remedy a corporate wrong. Cook on Stockholders, Sec. 735.

And the purchaser of stock has the same right to bring the suit that his transferee had. Winsor v. Bailey, 55 N. H. 218; Seaton v. Grant, L. R., 2 Ch., 459, and cases cited in Cook, 735–6; Bloxam v. Met. Ry. Co., L. R., 3 Ch. 337; Du Pont v. N. P. Ry. Co., 18 Fed. Rep. 467; Atchison R. R. Co. v. Fletcher, 10 Pac. Rep. 597; Ervin v. Oregon Ry. & Nav. Co., 35 Hun 544; 28 Hun 269; Young v. Drake, 8 Hun 61; Kingman v. Rome, etc., Ry. 30 Hun 73; Cook on Stockholders, 736, 737; Ford v. Chicago Milk Shippers, 155 Ill. 166.

An action by a shareholder against a corporation to restrain it from a contemplated transaction which is *ultra vires*, may be maintained by a stockholder, and must be sanctioned by the court, although all the other stockholders of the corporation are willing to assent to and affirm the proposed course of action; but in a case of evident expediency, and where there is no attempt to go beyond the power conferred, a court of equity will not be swift to grant the stringent relief of a preliminary injunction to a stockholder assailing transactions in the corporate affairs of which the other stockholders do not complain, and to which they have given their consent. Du Pont v. N. P. R. Co., 18 Fed. R. 467.

A bill in chancery may be filed by some of a very numerous body of shareholders in an unincorporated association to enforce a common benefit in behalf of a class of persons against a few of their associates who are especially charged with fraud. In such case it is not necessary that all the parties in interest shall be made parties to the bill. McDowell v. Joice, 149 Ill. 124.

Where the wrong is actually or potentially to a class or number of members, then one or more of these will be the actor or actors, the proceedings being instituted by him or them on behalf of all. Green's Brice's Ultra Vires, 685–6; Story Eq. Pleadings, Sec. 97; 1 Daniell's Ch. Prac. (4th Ed.) 223; 48 Daniel Equity Rule U. S. Sup. Ct.

And it is obligatory upon the complaining stockholder to sue in behalf of all the stockholders, since they are all equally interested in the results of the suit.   Wallworth v. Holt, 4 Mylne & Cr. 619; Taylor v. Salomon, Id. 134; Beman v. Rufford, 1 Sim. (U. S.) 550; Winsor v. Bailey, 55 N. H. 218; Blatchford v. Ross, 54 Barb. 42; Cunningham v. Pell, 4 Paige, 607; Marsh v. Eastern R. R., 40 N. H. 548; Whitney v. Mayo, 15 Illinois, 251.

But the bill need not allege who the other stockholders are, or whether a majority.   Descombes v. Wood (Mo.), 4 S. W. Rep. 82.

The application of a stockholder to a court of equity will not be denied merely because it is for the interest of the public or of the corporation, or of the stockholder himself, that the act complained of be allowed to stand.   The law does not depend upon the opinion of the court as to the benefit of the act.   Hoole v. Great, etc., Ry. Co., L. R., 3 Ch. 262; Stevens v. Rutland Ry. Co., 29 Vt. 545.

WINSTON & MEAGHER, CAMPBELL & CUSTER, and GEORGE HUNT, attorneys for appellees; JAMES F. MEAGHER, of counsel.

A stockholder who holds stock which has been voted in favor of the act complained of will fail in an action that seeks to set aside that transaction.   The law is clear that a stockholder who participates in an act or transaction *ultra vires* or even *malum prohibitum* can not afterward be heard to complain of the transaction in which he participated, in an action brought by him to set aside such transaction; and this rule extends to the transferees of such participating shareholder.   Hawes v. Oakland, 14 Otto 450, 104 U. S.; Dimpfell v. Ohio & Miss. Ry., 110 U. S. 209; Taylor v. Holmes, 127 U. S. 489; Dannmeyer v. Coleman, 11 Fed. Rep. 97; Le Warne v. Meyer, 38 Fed. Rep. 191; Brown v. Duluth, etc., Ry., 53 Fed. Rep. 889; Ffooks v. Southwestern Ry., 1 Sm. & Giff. 142; Venner v. Atchison, etc., Ry., 28 Fed. Rep. 581; Wood v. Corry, 44 Fed. Rep. 146; Parsons v. Hayes, 14 Abb. New Cases, 419, and cases cited; Langdon

v. Fogg, 14 Abb. New Cases, 435 (note); Barr v. Pittsburg, etc., Co., 51 Fed. Rep. 33; Hyde Park Gas Co. v. Kerber, 5 Brad. 132; Mining Co. v. Mining Co., 116 Ill. 170 (p. 179); Aurora, etc., Society v. Paddock, 80 Ill. 263; Bradley v. Ballard, 55 Ill. 413.

By the allegations of the bill the whole scheme whereby the shareholders of the Gas Trust were to exchange their certificates in that company for certificates to be issued by the Fidelity Company was tainted with illegality. And complainant was, by the bill, a participant in that scheme, and subsequently ratified the same, and this appearing, the courts will not lend their aid to him in his efforts to now overthrow and undo the very arrangement of which he was part and parcel. The maxim *non oritur actio ex turpi causa* applies, and the courts will leave such parties where it finds them. Tobey v. Robinson, 99 Ill. 222; Craft v. McConoughy, 79 Ill. 346; Samuels v. Oliver, 130 Ill. 73.

Means of knowledge is equivalent to actual knowledge. Wood v. Carpenter, 101 U. S. 135 (p. 143); Credit Company v. Arkansas, etc., Ry., 15 Fed. Rep. 53; Taylor v. South, etc., Ry. Co., 4 Woods 575.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

The complainant claiming to be a stockholder in the Chicago Gas Light & Coke Company, The People's Gas Light & Coke Company, The Consumers' Gas Company, The Equitable Gas Light & Fuel Company, The Hyde Park Gas Company, and the Lake Gas Company, six of the defendants named in the bill, filed his bill in the Circuit Court, alleging numerous fraudulent *ultra vires* acts by the officers of said corporations, a combination between said corporations and the Chicago Gas Company, and the Fidelity Insurance, Trust & Safe Deposit Company of Philadelphia, the other two defendants named in said bill, in fraud of the rights of appellant and in violation of the anti-trust law of this State, and prayed relief at the hands of the court from the consequences of such acts, and others of similar character, which the bill alleges were threatened by the defendants.

The Chicago Gas Company and The Fidelity Insurance, Trust and Safe Deposit Company of Philadelphia were not served with process and did not appear. The six defendant companies first named, each for itself, filed a general demurrer to the bill.

The cause came on to be heard upon the bill and the demurrers filed as above, and the court sustained said demurrers and dismissed said bill for want of equity, and awarded costs to the defendants.

From the decree so entered the complainant has appealed.

After alleging the incorporation of said six several gas companies, and the incorporation of the Chicago Gas Trust Company, and the acquiring by the latter of a majority of the stock of said six gas companies in furtherance of an illegal combination between said Gas Trust Company and said six gas companies, and the decision of the Supreme Court (Gas Trust case, 130 Ill. 268), declaring said combination to be against public policy and void, the bill proceeded to allege that to avoid the effect of said decision, the Gas Trust Company changed its name to the Chicago Gas Company, and transferred to it the stocks it had acquired in said six gas companies, and that the said Chicago Gas Company in turn transferred said stocks to said Fidelity Insurance Trust & Safe Deposit Company, of Philadelphia, where they now remain, by deeds of trust which provided that any holder of a certificate of stock in the Chicago Gas Company might, if he so desired to do, surrender the same to said Fidelity Insurance Trust & Safe Deposit Company, and receive in lieu thereof a certain other certificate issued by said Fidelity Insurance Trust & Safe Deposit Company, which would entitle every holder thereof to an undivided proportionate share of the total shares held by said Fidelity Company in said gas companies, and to certain specified rights in relation thereto.

The bill then alleged the enactment of the anti-trust law, approved June 11, 1891, and that said six companies come within the purview of its provisions.

The bill next alleged that the complainant is the holder and owner of a certain certificate issued to him by the said Fidelity Insurance Trust & Safe Deposit Company, which said certificate represents ten shares of one hundred dollars each, of the value of one hundred dollars each share, and that by reason of such ownership became, and is entitled to ten two hundred and fifty thousandths (10.250) of the entire stock of two hundred and fifty thousand shares, both in number and value, of the said Chicago gas companies, so held and controlled by the Fidelity Insurance Trust & Safe Deposit Company, under the trust deeds mentioned, and as such owner and holder is entitled to such an undivided proportionate part of the total two hundred and fifty thousand shares of the stock of the Chicago Gas Company on deposit with and held by the said Fidelity Insurance Trust & Safe Deposit Company, as the number of shares in said certificate mentioned shall bear to the whole or total number of two hundred and fifty thousand shares; and that he acquired said certificate and stocks without any knowledge that the same were issued pursuant to or in any manner tainted by any conspiracy or combination whatsoever.

It is then alleged that the complainant's stock and that of other stockholders is greatly diminished and impaired in value in consequence of the existence of the alleged combinations and conspiracies; alleged that complainant has requested the officers and agents of the six first named defendant companies, named in his bill, to desist and refrain from further disregarding and violating the plain provisions of their respective charters, as also the laws of the State of Illinois in the particulars in said bill charged and set forth, which they severally neglect and refuse to do; and complainant then says that he files his bill not only for himself, but in behalf of all others who are similarly situated, and who shall join with him in the prosecution of the cause, and share their just proportion of the expenses therein.

The prayer is for the appointment of a receiver of said six gas companies, and of the said Chicago Gas Company, whose duty, under the direction of the court, should be to

take possession of all their assets, franchises and privileges, and continue the manufacture and supply of gas; that the alleged combination existing and doing business under the name of said Fidelity company be dissolved, and that all holders of stock or shares of stock issued by said Fidelity company, including complainant, be permitted to surrender the same, and to receive in lieu thereof their equivalent of the stock of the said six gas companies, if practicable, but if not, that then the property and franchises of each of said corporations be converted into money and distributed between the several stockholders according to their respective interests, and for an injunction, and for general relief.

In the view we take of the case, it is not necessary to set out the various *ultra vires* acts, and illegal conspiracies and combinations, charged by the bill to have been committed by either or all of the defendants. It is enough if, upon inquiry, it shall be ascertained that the complainant does not stand in a position to complain concerning said acts and combinations.

Omitting to consider whether the complainant, as the owner and holder of the certificate issued to him by the Fidelity company, may be held to be a stockholder in all or any of the said six gas companies to any amount, and as such entitled to such relief as a stockholder therein has or may have ; and omitting to consider the right of the owner of but ten two' hundred and fifty thousandths (10.250) part of what is held by the said Fidelity company to relief so radical as is prayed, and which if granted would affect, perhaps injuriously, the vastly preponderating interests and property rights of other persons, we will first consider whether the complainant stands in a position to claim the equitable relief he asks for, assuming that if he did stand in a position where he could claim it, he would be entitled to such relief.

It will be observed that the complainant does not allege when he acquired the certificate which he alleges he is the owner of, and which he says was issued to him by said Fidelity Trust Company, nor when he became the owner of

that which entitled him to have such certificate issued to him.

The rule is, that such construction will be given to the pleading of a party as is most unfavorable to the pleader. He had the right to state when he acquired said certificate, and when he acquired whatever it was that entitled him to have such certificate issued to him. Not having done so, we are bound to treat him as having been an owner thereof when the illegal and *ultra vires* acts and combinations of which he complains were committed, and as being a participant therein.

He alleges that he acquired the certificate without knowledge that the same was tainted with any conspiracy or combination; but that is not enough. He does not allege, and it is not inferable from his bill, that he did not know at the time it was committed all that was done of which he complains. Every inference deducible from his bill is, that he not only knew of, but participated in, all that he complains of. One who has participated in illegal acts and conspiracies, and partaken of the fruits thereof, may not tear down the structure he has helped to rear simply because he did not know that he had been engaged in illegality and conspiracy.

The general rule is, that equity will leave one who has been engaged in illegal conduct and seeks relief from its results, in the position where it finds him. He can not be relieved unless he himself be free from participation in the fraud. Craft v. McConoughy, 79 Ill. 346; Tobey v. Robinson, 99 Ill. 222; Samuels v. Oliver, 130 Ill. 73; Hyde Park Gas Co. v. Kerber, 5 Ill. App. 132.

The *laches* of appellant presents a further subject of consideration, which, because it does not appear to be argued by the able counsel for the appellees, we mention with hesitation.

We take notice that the decision of our Supreme Court declaring the Gas Trust to be an illegal combination was announced in 1889, and under the rule heretofore stated with reference to pleadings being most strongly construed

against the pleader, the legal inference is, that the complainant was a stockholder in that illegal trust.

Color is lent to the correctness of such inference by a statement on page 11 of the brief of appellant's counsel that appellant acquired his stock through the Chicago Gas Company, to which it is alleged the Gas Trust, in order to avoid the effect of the decision referred to, changed its name and transferred the stocks it wrongfully held. We will, therefore, conclude both from the inference drawn from the bill itself, and from the statement of appellant's counsel, that appellant's interest, represented by his said certificate, was the same as that which he held in the illegal Gas Trust, and was acquired before the decision referred to, which was made five years before appellant filed his bill.

The case of Rabe v. Dunlap, 51 N. J. Eq. 40, was one where the two complainants held eleven out of a total of two hundred and forty-nine shares that were issued of an authorized five hundred shares of a corporation organized for specific objects. Some of the persons, not including the complainants, interested in that corporation, organized three other corporations for objects not embraced within those for which complainant's corporation was organized. At a later day, the four corporations agreed to consolidate under the provisions of an act purporting to authorize such consolidation. At the meeting of the stockholders of the four corporations called for the purpose of effecting such consolidation, a large majority of the stock in complainant's corporation was represented and voted in favor of consolidation, but the complainants did not attend, although they had notice of it, nor was their stock represented. All the formalities of the statute were complied with to effect a lawful consolidation of the corporations, and provisions were made for the exchange, share for share, of the stock in the old companies for stock in the new corporation, of which the complainants had notice, but did not comply with. The objects of the new corporation so formed were, however, radically different from, and wholly foreign to, the purposes for which complainants' corporation was created, and the

court held that had the complainants acted promptly, and while it would have been within the power of the court to have protected them without doing wrong and injustice to others, an injunction would have been granted to them to prevent the appropriation of the property of their corporation to new and different purposes from those for which their corporation held it, and from subjecting it to sale under a mortgage given by the new corporation to raise money for such variant purposes.

Yet the complainants having lain by, passive and inactive, for over three years, during which time the mortgage had been given, apparently assenting to the *ultra vires* acts complained of, they were held to be too late to obtain the relief asked for. Apparently the relief there asked was nearly as radical as that which is sought in this cause, for in the language of the opinion of the court, the complainants asked " to have the corporation ripped up from bottom to top, and everything which it has done affecting their rights may be undone."

The rule was there stated to be that to entitle stockholders to the summary interference of a court, they must apply so recently after the doing of the acts complained of that the court may stop or undo the wrong to them without doing equal or greater wrong to some other person; or, in other words, if a stockholder wants protection against the consequences of an *ultra vires* act, he must ask for it with sufficient promptness to enable the court to do justice to him without doing injustice to others.

And quotations were made from Lord Camden, that "nothing can call forth the activity of a court of equity but conscience, good faith and reasonable diligence. Where these are wanting, the court is passive and does nothing. Laches and neglect are always discountenanced;" and from Sir John Romilly, that "shareholders can not lie by, sanctioning, or by their silence at least acquiescing in, an arrangement which is *ultra vires* of the company to which they belong, watching the result, if it be favorable and profitable to themselves to abide by it, and insist on its validity;

but if it prove unfavorable and disastrous, then to institute proceedings to set it aside."

See also Kent v. Quicksilver Mining Company, 78 N. Y. 159, where, although the issuance of the preferred stock there in question was *ultra vires* and the complainant was a non-assenting holder of common stock, relief was denied him on account of his neglect for four years to invoke a judicial declaration that the company had exceeded its powers.

And so in the case at bar, we see the complainant waiting for a period of about five years before asserting any right whatever to have the acts complained of set aside. In that time complainant alleges that a new bonded indebtedness of ten millions of dollars has been needlessly created for the purpose of defrauding him of his stock.

Now it is apparent that in the regular course of affairs there must be many persons who have invested in said new bonds, and to upset the entire arrangements under which said bonds were issued, and to destroy the entire fabric upon which they depend, would manifestly work harm and injury to many presumably innocent persons who have acted upon the doings of the corporations which have for so long remained unquestioned. The distinction between the *ultra vires* conduct of a corporation in respect to which the public is concerned, and such conduct as between the corporation and its stockholders only, is well pointed out by Judge Folger in Kent v. Quicksilver Mining Co., *supra*, and should never be lost sight of in considering cognate questions. In the first case assent or laches by stockholders will avail nothing, while in the other it will control.

We do not think the complainant has made such a case as frees himself from the charges of bad faith and laches, and therefore, upon both grounds discussed by us, we think the decree of the Circuit Court dismissing his bill for want of equity should be affirmed, and it is so ordered.    Affirmed.