## Louis A. Coquard v. The National Linseed Oil Company.

1. APPELLATE COURT PRACTICE—*Abstract Must Show Error Complained of.*—The facts which are relied upon to maintain a suit must be pleaded, and upon appeal must be set out in the abstract, and the Appellate Court will not undertake to supply, from an exceedingly voluminous record, matters which counsel seem to have been unable to find in it, or are unwilling to present as required by the rules of the court.

Bill, to wind up a corporation. Appeal from the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in this court at the October term, 1896. Affirmed. Opinion filed November 30, 1896.

FRANKLIN A. McCONAUGHY, attorney for appellant.

WILLIAM W. GURLEY and HORACE G. STONE, attorneys for appellee.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

Appellant's amended bill was demurred to, and was dismissed for want of equity, and this appeal has ensued.

The appellant alleged that he was the owner of 300 shares in the appellee corporation, purchased by him at different times, viz.: 150 shares on June 15, 1889, 50 shares

on December 6, 1889, and 100 shares on December 14, 1893, of which shares 150 stand in his own name, and 150 shares in the name of his clerk, upon the books of the corporation.

It is alleged that the capital stock of the appellee corporation is $18,000,000, consisting of 180,000 shares. Appellant's interest in the corporation is, therefore, equal to one-sixth of one per cent.

The prayer of appellant is, in substance, for a discovery of the affairs and condition of the corporation, for the appointment of a receiver of its property, and for a winding up of its business and a distribution of its assets.

Concerning such property the bill, as we understand, alleges it to consist of the assets of the National Linseed Oil Trust, and of numerous other corporations absorbed or purchased by the appellee, and paid for in the stock of the appellee of a face value greatly above its real value, and all combined into one corporation under the name of the appellee, with a capital far in excess of the values of the properties so acquired and held by it.

It is impossible to ascertain from appellant's brief just what is complained of.

We make some extracts from the brief which come the nearest to affording us any aid in ascertaining what it is that appellant relies upon, as ground for the interference of a court of equity at the suit of a shareholder.

" This case comes before the court with all the allegations of the bill admitted. It is therefore admitted that the defendant corporation is simply the successor of the National Linseed Oil Trust; that the National Linseed Oil Trust was a trust, pure and simple, organized on precisely the same lines as the other great trusts of the country. * * * It is most earnestly insisted here by counsel, that the trust character of the defendant corporation being admitted by the pleadings, and by the express declaration of its legal head, what is a trust and a monopoly with the rules and definitions at common law, and those set out in our recent statutes above referred to, this without anything else, compels the interference of the chancery court, under its general

equity power and under the 25th section of the general in-
corporation act. It seems to be perfectly clear, as clear and
as positive as the English language can make it, that there
are two provisions of this section of the statute which
justify, and compel the interference of the court.  *  *  *

Again the corporation has in contemplation of law 'ceased
doing business,' unless we will presume that notwithstand-
ing the decisions of our courts, and the enactment of our
statutes, the unlawful business will be continued in defiance
of both; nor can we close our eyes to the effect—the inevi-
table effect—of allowing this business to continue, one of the
disastrous consequences of which be considered. The cor-
poration in its statement shows a large and growing item
of bills receivable, etc. It amounts now to nearly two and
one-half million dollars. Under our statutes and the con-
struction given them by this court, this is entirely uncol-
lectible—means disaster to all concerned, and the longer the
corporation continues and the larger this item grows, the
greater the disaster.  *  *  *  But this is by no means all.
On examining transcript of the record in this case the court
will see that nearly all of the provisions of the statute under
which this corporation is manifested have been disregarded
or violated, as well as provisions of law outside of the stat-
utes of the State.  *  *  *

The last quotation of the stock is fifteen cents on the
dollar, and this can not and will not be denied.

The court below should have overruled the demurrer to
the bill and decreed the relief asked. It should have com-
pelled a discovery by the officers of the company, enjoined
the illegal practices of the company, and placed it in the
hands of a receiver. If, as we have endeavored to show,
it is doing no legitimate business, then in contempla-
tion of law it has ceased to do business, as no court will
recognize that as a business, which, both at common law is
made lawful, and by express provision of statute, and prac-
tically made impossible. *Nemo potest nisi quod de jure potest.*
The language of the statute does not contemplate a necessity
to wait until the State has forfeited the franchise. It de-
clares that when it, or its agents 'do, or refrain from doing

Coquard v. National Linseed Oil Co.

any act which shall subject it to a forfeiture of its charter or corporate powers, * * * courts of equity shall have full power * * * to appoint a receiver,' etc. It is of the greatest importance to the *bona fide* stockholders that the wrecking shall stop; that the growth of the uncollectible bills receivable shall stop; that the corporation be put in liquidation, so that these stockholders may know the extent of, and properly meet, the disaster which has overtaken their investments."

An examination of the bill as set out in the abstract, reveals nothing much more satisfactory in determining what it is that is complained of, upon which to apply any principle of law. Much is said about trusts and their invalidity, but whether a trust exists, or, if one exists, what consequences follow, must be made to appear from facts pleaded, and such facts as are relied upon should be set out in the abstract.

With so little aid, we will not undertake to supply from an exceedingly voluminous bill, matters which counsel seems to have been unable to find in it, or unwilling to present to us as required by the rules of the court.

The appellant seems to expect that this court will find reasons for conclusions which he states, but for which he could not himself discover the grounds.

The appellant alleges himself to be a dealer in stocks and bonds, and to have been such for more than twenty years, and so near as we can make out from the abstract, the principle purchases of oil mill properties of which he complains, were made by the appellee in February, March and April, 1890, which was six years before his amended bill was filed, and about a year after he became a stockholder.

What we said in Levin v. Chicago Gas Light and Coke Co., 64 Ill. App. 393, about participation in alleged illegal conduct, and *laches* by shareholders under somewhat similar circumstances, has application here.

We do not see that appellant has made out for himself a case for equitable interposition, and therefore affirm the decree of the Circuit Court, dismissing his bill for want of equity.